Argued December 12, 1913, decided January 6, 1914.

## HUME *v.* SEATTLE DOCK CO.*

(137 Pac. 752.)

**Mechanics' Liens—Right to Lien—Materialmen.**

1. A materialman or laborer, to be bound by a stipulation in the principal building contract against liens against the building, must have assented thereto, or at least notice of the stipulation must have been brought home to him.

> [As to stipulation in building contract against mechanics' liens as precluding contractor from filing lien, see note in Ann. Cas. 1913E, 562.]

---

*On the question of the effect of unintentional mistake in filing excessive lien, see note in 29 L. R. A. (N. S.) 306.     REPORTER.

**Mechanics' Liens—Right to Lien—Materials Lienable.**

2. Though crude material for the manufacture of an article for the market generally without reference to any particular structure is not lienable against the building in which it is used, yet, where cement and plaster are furnished for the manufacture of blocks and tile for a particular building, they are lienable against such building when so used.

**Mechanics' Liens—Notice of Lien—Effect of Error.**

3. In a notice of mechanic's lien for $1,871.95, a duplicate charge of $390 and a failure to credit $215 for sacks returned, both occurring through error of a competent bookkeeper, do not render the lien void.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 2.    Statement by MR. JUSTICE EAKIN.

This is a suit by R. A. Hume against the Seattle Dock Company, a corporation, The Northwestern Mutual Life Insurance Company, a corporation, and B. E. Hayman, trustee of MacIte Fireproofing Company, a corporation, and MacIte Fireproofing Company, a corporation, to foreclose a materialman's lien.

At the time of the transactions here in controversy the Seattle Dock Company was the owner of the property known as the "Chamber of Commerce Building," in Portland, Oregon. On August 15, 1910, it contracted in writing with the MacIte Fireproofing Company, whereby the latter agreed, for a consideration, to furnish all materials and labor and to install and complete all of the MacIte plaster block and tile partitions and the fireproofing of all steel trusses in the ninth and tenth floor additions to the Chamber of Commerce building, in accordance with certain drawings and specifications. The said MacIte Fireproofing Company was at the time the owner of a plant at Twenty-Second and Reed Streets, in Portland, where it manufactured plaster blocks and tile as finished products. The plaintiff, a dealer in cement and plaster, furnished the MacIte Fireproofing Company at said place cement and plaster for manufacturing these plaster blocks and tile, and for the amount due him for this material

furnished he filed a materialman's lien upon the building in the sum of $1,871.95. This suit was brought to foreclose the lien. Upon the trial the court rendered a decree foreclosing the lien for the sum of $1,330.35. The defendant Seattle Dock Company appeals.                                          AFFIRMED.

For appellant there was a brief over the names of *Mr. Thomas H. Crawford, Mr. John B. Cleland* and *Wilbur, Spencer & Dibble,* with oral arguments by *Mr. Crawford, Mr. Cleland* and *Mr. Ralph W. Wilbur.*

For respondent there was a brief over the name of *Messrs. Beach, Simon & Nelson,* with an oral argument by *Mr. Roscoe C. Nelson.*

MR. JUSTICE EAKIN delivered the opinion of the court.

Several points are urged on this appeal but may all be covered by three principal grounds of defense: (1) When an owner of a building makes a contract with a builder containing a stipulation that no mechanics' liens shall be filed, such a stipulation by the contractor binds or precludes the laborers, materialmen or subcontractors from filing a lien for labor or material furnished and used in the construction of the building; (2) that the materials furnished by the plaintiff, namely, sand and cement, from which the cement blocks and the tile were constructed, were not lienable; (3) that the error of $606.10 in the statement of the account in the lien filed rendered the lien void. All other questions discussed by appellant in his brief are a part of or included in one of these three.

1. As to the first question there is a great conflict in the cases, accounted for in most instances by the difference in the relative statutes. Where there is a covenant in the contract against liens or an express stipulation that liens shall not be filed, the courts of

a great many of the states hold that such stipulation will not bind the laborer, materialman or subcontractor unless he has assented to it.

This is the holding in *Norton* v. *Clark,* 85 Me. 357 (27 Atl. 252), which is quoted with approval in *Miles* v. *Coutts,* 20 Mont. 47 (49 Pac. 393), in which it is said:

"We think * * the stipulation under discussion, 'like all other stipulations, binds only those who made it or assented to it,' is the only just and legal conclusion of which the case is susceptible. We are not prepared to hold, notwithstanding the majority of the decisions be that way, that rights conferred upon a person by statute may be contracted away by a contract made with others, to which he has never assented, and of which he has no knowledge. We think such a construction of our statute in relation to mechanics' liens is unauthorized and would result in defeating the end had in view by its enactment by practically depriving the persons sought to be benefited of all protection under its provisions."

And many other courts hold to the same rule. This is the holding in *Cost* v. *Newport Builders' Supply & Hdw. Co.,* 85 Ark. 407 (108 S. W. 509), reported in 14 Ann. Cas. 144, where the cases are collated. To the same effect are the courts of Iowa, Michigan, Missouri, Colorado, Ohio and Indiana.

In *Gimbert* v. *Heinsath, Madden et al.,* 5 O. C. D. 175, 180, the court says:

"The statute seems to give importance to the contract only as giving consent of the owner that the improvement be made on his land. The statute gives to laborers and materialmen a direct lien, not through any rights the contractor may have, but direct upon the consent of the owner to the improvement on his land and the performing of labor or the furnishing of materials. This right is by virtue of the statute, and

the statute puts this right into * * every consent he
gives for the erection of a structure for him on his
land. If, then, the law makes these rights a part of
the contract, as much as though written therein, what
right have the owner and the contractor to strike them
out and write the very opposite in without the assent
of the laborer and materialman? This cannot be done
without their assent. This being a positive statutory
right, it cannot be taken from those who were intended
to be benefited by it without their assent being clearly
shown. To take from them this right by implication
would be construing a remedial statute intended for
their benefit most strongly against them. This can-
not be done without violating an elementary rule of
construction.''

But, on the other hand, a few states follow the hold-
ing in Pennsylvania, as stated in *Schroeder* v. *Gal-
land*, 134 Pa. 277 (19 Atl. 632, 19 Am. St. Rep. 691,
7 L. R. A. 711), in which the contractor bound himself
to erect and deliver over to the party of the first part,
free from all liens and encumbrances, or any claims
whatever that might arise, a certain building; it being
held that a mechanic's lien cannot be filed by a sub-
contractor for work or material furnished by him
toward the erection of the building, and that the only
connection between the owner and the subcontractor
is through and by means of the contract between the
owner and the contractor, so that the subcontractor is
chargeable with notice of all its terms and stipulations
and is bound thereby. To this effect are the cases in
the District of Columbia, Wisconsin and Indiana. By
this rule the laborer is not consulted, and he must
accept the work under the conditions of the original
contract, in the making of which he had no voice. It
was to protect the workman against such conditions
that our lien law was enacted. A lien is not given
through the contractor by subrogation but is a direct

and independent lien to each claimant against the property. In New York and many other states the lien is dependent upon the contractor's claim by subrogation, and the law applicable to such cases is not always pertinent where the lien is direct: See *Baldridge* v. *Morgan,* 15 N. M. 249 (106 Pac. 342), reported in Ann. Cas. 1912C, 337. In *Seeman* v. *Biemann,* 108 Wis. 365 (84 N. W. 490), the limitation of a subcontractor's rights to a lien by the terms of the original contract is by virtue of the fact that the subcontractor's authority to bind the owner depends upon the right of his principal to do so under the same circumstances; and this is the theory of the Pennsylvania cases. In Montana it is held that by the statute of that state the subcontractor has a direct lien and that his rights are not limited to those of the contractor. Kneeland, Mechanics' Liens, § 136, and *Merrigan* v. *English,* 9 Mont. 113 (22 Pac. 454, 5 L. R. A. 837), seem to recognize this reasoning on the theory that the subcontractor can only claim a lien through the original contract and not by a direct and independent lien. In the former it is said:

"It has been held that the express stipulation against liens will affect not only the contractor but all persons acting under him or depending upon the original contract as a basis for their liens, upon the principle that persons agreeing to furnish labor or materials to the original contractor do so with reference to such original contract in subordination to its provisions."

In the case of *Geo. B. Swift Co.* v. *Dolles,* 39 Ind. App. 653 (80 N. E. 678), the whole argument is based on that principle, citing the Pennsylvania cases as authority and also the case of *Bowen* v. *Aubrey,* 22 Cal. 566, which has been superseded by a later statute. See *Whittier* v. *Wilbur,* 48 Cal. 177, where it is said that the contractor and owner cannot deprive the materialman of his lien by introducing a stipulation into the

building contract to the effect that the contractor agrees to indemnify the owner against any liens by persons furnishing the material. Jones, Liens, at Sections 1304 and 1304a, states that, where the provisions of a statute give a direct lien to a subcontractor, he is not limited by the amount due the contractor. He must connect himself with the owner through the contractor as the evidence of the owner's consent to the improvement, but the right of lien to the subcontractor and materialmen is by operation of law incorporated into and made a part of the owner's contract as much as if expressly included and written therein: See *Cole Mfg. Co.* v. *Falls*, 90 Tenn. 466 (16 S. W. 1045). All these authorities recognize that the lien may be waived, but that the lienor must waive it for himself. Even Pennsylvania now comes over to this view by the Statute of 1891 (page 225), enacted soon after the decision in *Schroeder* v. *Galland*, 134 Pa. 277 (19 Atl. 632, 19 Am. St. Rep. 691, 7 L. R. A. 711), which provides that a stipulation in the original contract that no lien shall be filed is invalid against subcontractors unless they have conceded in writing that they are bound by the stipulation: See Jones, Liens, § 1222. Therefore, we conclude that the materialman or laborer, to be bound by stipulation in the original contract against liens, must have assented thereto, or at least notice of that condition must be brought home to him, which was not done in this case.

2. As to the lienability of the material furnished by plaintiff: First, it may be stated as a fact that the material furnished by plaintiff was intended especially for the manufacture of blocks and tile for the work to be performed by the MacIte Fireproofing Company on the Chamber of Commerce Building. This is the testimony of Hume, and it is admitted, at least by recital in the brief of defendant Seattle Dock Company, and not alone on the credit of the MacIte Fireproofing

Company, that it was understood the material was to be used in the construction of the Chamber of Commerce Building. Then the question is whether material furnished to the MacIte Fireproofing Company at its factory for the purpose of manufacturing blocks and tile for use in the construction of the Chamber of Commerce Building was lienable. The appealing defendant contends that raw material used to manufacture a commercial article is not lienable, and also that the identity of the material is lost. We understand the rule to be that the lienability of the material does not depend on its suitableness in its crude condition for use in construction of the building or on its identity being maintained, but whether it was furnished especially for the manufacture of something to be used in such structure. Sand, cement, lime and other crude materials always enter into the mortar, plaster and concrete of buildings, and it has never been questioned that in such cases they are lienable; and we know no reason why any crude material furnished especially to be used in some changed form in the erection of a structure upon being so used should not be lienable. The laborer who fells the trees for the manufacture of lumber for a particular structure certainly is as much entitled to a lien therefor as the teamster who hauls it from the mill-yard to the building; the only question being: Was the service rendered intended for the particular structure? Of course, crude material for the manufacture of an article for the market generally without reference to any particular structure would not be lienable against the building in which it was used. It is said in 20 Am. & Eng. Ency. of Law (2 ed.), 343, that where a person sells material without any reference as to what shall be done with it, if used in constructing a building, no lien will attach; the general rule being that it is necessary that a particular building shall be in the contemplation of the purchaser

or employer at the time of the sale of material. In 27 Cyc. 45, it is said that the right to a lien for materials furnished extends to all such materials as ordinarily enter into or are used in the construction, repair or improvement of the building. Whatever may be the condition of the materials furnished in the construction of the building, whether they are very rough or perfectly adapted to the purpose, and in whatever quantities or from whatever source they may have been originally purchased, or although kept by the contractor as merchandise, his lien is not affected by these considerations, provided only the materials are included in the work contracted for. Therefore, we think that the material furnished by the plaintiff in this case was lienable.

3. The third contention is that there was an error in the statement of the account in the lien notice, namely, a duplicate charge of an item for material furnished in the sum of $390, the price of a carload of plaster, charged as of date September 30th, and charged again in four items as of the dates October 1st, 3d, 4th and 5th. Also the said defendant claims that the account was not correctly stated, as required by the statute, in that there had been returned to plaintiff 2,151 cement sacks of the value of $215.10, which rendered the notice of lien fraudulent and void. Plaintiff filed an amended complaint by which he sets forth the error in the duplicate charge of $390, and reduces the amount claimed in the notice of lien by that amount, and in his testimony explained how the excessive charge occurred, namely, that the statement in the lien was made up by him on information furnished by his bookkeeper; that, believing it to be correct, he so swore to it and did not personally examine the books to see whether they were right; that the notice of lien contains the items shown by the ledger; that in preparing for the trial his attorney asked him to look up the proper receipts for the

various deliveries, and in so doing he discovered the double charge; and that his bookkeeper was a competent one. At the time he was doing a business of $6,000 a day. As to the credit of $215.10 for sacks, the credit was not made on the books at the time the lien notice was made out, and he did not know at that time that any sacks had been returned, nor did he have personal knowledge of these matters, depending upon the books. Thus it is plain that these two errors in the account contained in the lien were mistakes on the part of the plaintiff, and that the statement was made in an honest belief of its correctness. Such an error would not render the lien void. It has been held in this court that where the plaintiff did not knowingly and willfully file an untrue statement of the account nor make it carelessly or negligently, but that the mistake was made in an honest belief of its correctness, the lien will not be held void: *Rowland* v. *Harmon,* 24 Or. 529 (34 Pac. 357); *Lumber Co.* v. *Washburn,* 29 Or. 170 (44 Pac. 390); *Allen* v. *Elwert,* 29 Or. 433 (44 Pac. 824, 48 Pac. 54); *Cooper Mfg. Co.* v. *Delahunt,* 36 Or. 407 (51 Pac. 649, 60 Pac. 1).

The decree is affirmed. AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE MCNARY concur.