Argued July 7, affirmed September 8, 1914.
Reargued on rehearing January 26, former opinion sustained February 23, 1915.

## OREGON LUMBER & FUEL CO. v. NOLAN.*

(143 Pac. 935; 146 Pac. 474.)

Mechanics' Liens—Persons—Liable—Owner—Notice Denying Liability.

1. Under Section 7416, L. O. L., giving to every person performing labor upon or furnishing material used in the construction of any building a lien for labor or material furnished at the instance of the owner or his agent, and making every contractor an agent of the owner for the purposes of the act, Section 7417, imposing such lien upon the land if it belonged to the person who caused the building to be constructed, but if such person owned less than a fee simple, then upon the interest only, and Section 7419, providing that every building constructed on lands with the knowledge of the owner shall be held to have been constructed at his instance and shall be subject to lien, unless within three days after knowledge of such construction he posts a notice that he will not be responsible therefor, where a lease for 15 years required the lessee to build on the land, the building to revert to the lessor, the lessee became a contractor and agent of the lessor, and the land became subject to the liens of laborers and materialmen, though the owner posted the notice prescribed by Section 7419.

[As to "owner," in contemplation of mechanic's lien laws, including tenant for years, see note in Ann. Cas. 1912A, 316.]

---

*Upon the power of the lessee to subject the owner's interest to mechanic's lien, see note in 23 L. R. A. (N. S.) 601.

On the question of requiring another to make improvements upon land at his own expense as a consent by the owner which will subject his interest to a lien, see note in 11 L. R. A. (N. S.) 764.

The question of an agreement between a landlord and tenant as to removal of fixtures and improvements by the latter as affecting third person claiming a mechanic's lien is treated in a note in 45 L. R. A. (N. S.) 100.                                               REPORTER.

Mechanics' Liens—Notice of Lien—Description of Property.

2. Though notices of mechanics' liens fix the beginning point of the description of the land at 50 feet north of southeast corner, Manning's Addition, while the answer in the suit to foreclose states that the house was built on land the description of which began 35 feet north of the southeast corner of the addition, but the claims of lien state that the building is a three-story apartment house fronting west on Ash Street, and all being situated in the City of Portland, and that the tract is inclosed by the east line of Ash Street on the west, Manning Addition on the north and south, and another addition on the east, the description is sufficient for identification of the property involved.

Mechanics' Liens — Notice of Liens — Description of Property — Materials.

3. A notice of mechanic's lien locating and identifying the house involved sufficiently complied with statutory requirements as to perfection of lien, although it did not state of what the material furnished consisted, other than by reference to invoices rendered to the contractor, and not to the owner.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 1. Statement by MR. JUSTICE BURNETT.

This is a suit by the Oregon Lumber and Fuel Company, against Oak Nolan, George Jovik, M. A. Blanchard, G. L. De Haven, A. C. Martin, J. B. Delsman, F. J. Mitchell, S. J. Bice, W. N. Hart, R. I. Dawes, L. Evans, G. R. Watson, Thos. W. James, W. C. Carrico, Inman-Poulson Lbr. Co., a corporation; J. C. Bayer, Frank Masson, Pac. Coast Steel Co., a corporation F. T. Crowe & Co., a corporation, Columbia Hdw. Co., a corporation, C. Gregovich, E. Daugherty, Van Cleff & Lundy, partners doing business under the name of Van Cleff & Lundy.

The defendant Nolan, at the times mentioned in the pleadings, was the owner of a certain tract in the City of Portland, and on the 15th of January, 1912, made a written contract with the defendant M. A. Blanchard, whereby they agreed:

"That in consideration of the covenants and agreements herein expressed and to be kept and performed,

the said Nolan does hereby lease and let unto the said Blanchard, his heirs and assigns for the term of fifteen years from the date hereof all the following described real property, to wit: A strip of land lying between Mayor Gates and Manning's Addition to the City of Portland, and beginning at the southeast corner of Manning's Addition; thence east to the west line of block six in Mayor Gates' Addition; thence north along the west line of May Gates' Addition to the line between lots 7 and 8 in block 6 in Mayor Gates' Addition; thence west to the east line of Manning's Addition; thence southerly along the east line of Manning's Addition to the place of beginning; said strip of land being 23 feet wide on the south end and being 234 86/100 feet long, all being in Multnomah County, Oregon.''

After providing for payment by Blanchard of a rental of $50 per month, and all taxes and other public charges, the contract further prescribes that:

''The said Blanchard shall construct a substantial rooming, boarding or apartment house building upon said property at a cost of not less than $6,000. Construction of said building shall be commenced within a reasonable time and shall be completed within four months from the date hereof. At the expiration or termination of this lease all buildings or other improvements which may be erected upon the said land during the life of this contract, shall immediately revert to the land and the title thereto shall become immediately vested in the said Nolan, his heirs or assigns.''

The instrument also gave Blanchard the exclusive option to purchase the property on certain terms therein named. It was agreed also in the writing that:

''Said Blanchard shall suffer no liens or other encumbrances to be levied against the said land during the life of this contract, and the same shall not be

encumbered for any debts contracted by the said Blanchard. This lease shall operate and be construed as being the first lien upon all of said property which might be created or suffered to attach by the said Blanchard. In case default shall be made in the payment of rent for a period of ten days after the same falls due, or if any of the terms or conditions of this contract shall be broken, then this contract shall immediately terminate and become absolutely void. At any time after the expiration or termination of this contract, the said Nolan may take immediate possession of all of said property without any notice or demand, and may enter thereon and compel the said Blanchard or those claiming through or under him to remove, or the said Nolan may forcibly take possession thereof and do any act which may be necessary to secure possession without being guilty of trespass or without prejudice to any rights or remedy which might be exercised by him for arrears of rent or breach of contract.''

It appears that Blanchard contracted with one Jovik to erect the building. The latter in turn contracted with the plaintiff and others for materials to be used in the edifice. The building is situated on ground at the east end of East Ash Street in Portland, so that if that thoroughfare were projected eastward it would pass through the house itself. The site being above the grade of that street, a subcontractor named Martin began excavation there for the foundation. On the following day, March 22, 1912, in the afternoon after the workmen had gone, the defendant Nolan posted in the partially completed excavation a notice substantially as follows:

''Notice is hereby given that the undersigned Oak Nolan is the owner of this land; that he will not be responsible for any labor or material used or furnished for any building or improvement which may be placed

hereon, and this land shall not be holden or subject to any lien for any such building or improvement.

"[Signed]    OAK NOLAN,

"412 Chamber of Commerce,

"Portland, Oregon."

The record discloses that Jovik abandoned his contract and disappeared about April 13, 1912, leaving unpaid sundry bills for material which had been furnished to him for use in the building. About two weeks subsequently Blanchard made arrangements with other contractors to continue the work of erecting the structure which continued up to some time about July 1, 1912, when he himself failed, and the plaintiff and all the defendants except Nolan and Blanchard filed notices of liens on the premises. The plaintiff, acting in its own behalf and as assignee of another, instituted this foreclosure suit, and the other lien claimants filed cross-complaints. Nolan defended principally upon the ground that the posting of the notice mentioned exonerated his property from liability on account of any of the claims. The Circuit Court heard the case on the issues formed and entered a decree in favor of most of the claimants, disregarding others, and directed the property to be sold for the satisfaction of the liens thus established. From this decree the defendant Nolan alone appeals.

AFFIRMED.    SUSTAINED ON REHEARING.

For appellant, Oak Nolan, there was a brief and an oral argument by *Mr. B. J. Howland.*

For respondents there was a brief over the names of *Messrs. Sheppard & Brock, Messrs. Lewis & Lewis, Messrs. Fenton, Dey & Fenton* and *Messrs. Cake &*

*Cake,* with oral arguments by *Mr. C. A. Sheppard* and *Mr. Arthur H. Lewis.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. It is declared in Section 7416, L. O. L., thus:

"Every mechanic, artisan, machinist, builder, contractor, lumber merchant, * * and other person performing labor upon or furnishing material * * used in the construction, alteration, or repair, either in whole or in part, of any building, * * shall have a lien upon the same for the work or labor done * * or material furnished at the instance of the owner of the building or other improvement or his agent; and every contractor, subcontractor, architect, builder, or other person having charge of the construction, alteration, or repair in whole or in any part of any building or other improvement as aforesaid, shall be held to be agent of the owner for the purposes of this act."

Sections 7417 and 7419, L. O. L., are here set out in full:

"The land upon which any building or other improvement as aforesaid shall be constructed, together with a convenient space about the same, or so much as may be required for the convenient use and occupation thereof (to be determined by the judgment of the Circuit Court at the time of the foreclosure of such lieu), shall also be subject to the liens created by this act, if, at the time the work was commenced or the materials for the same had been commenced to be furnished, the said land belonged to the person who caused said building or other improvement to be constructed, altered, or repaired; but if such person owned less than a fee-simple estate in such land, then only his interest therein shall be subject to such lien; and in case such interest shall be a leasehold interest, and the holder thereof shall have forfeited his rights thereto, the purchaser of such building or improvements

and leasehold term, or so much thereof as remains un-expired at any sale under the provisions of this act, shall be held to be the assignee of such leasehold term, and as such shall be entitled to pay the lessor all ar-rears of rent or other money and costs due under said lease, unless the lessor shall have regained possession of the said land and property, or obtained judgment for the possession thereof, prior to the commencement of the construction, alteration, or repair of the build-ing or other improvement thereon; in which event, said purchaser shall have the right only to remove the building or other improvement, within thirty days after he shall have purchased the same; and the owner of the land shall receive the rent due him, payable out of the proceeds of the sale, according to the terms of the lease, down to the time of such removal'': Section 7417, L. O. L.

''Every building, or other improvement mentioned in Section 7416, constructed upon any lands with the knowledge of the owner or the person having or claim-ing any interest therein shall be held to have been constructed at the instance of such owner or person having or claiming any interest therein; and the in-terest owned or claimed shall be subject to any lien filed in accordance with the provisions of this act, unless such owner or person having or claiming an in-terest therein shall, within three days after he shall have obtained knowledge of the construction, altera-tion, or repair, give notice that he will not be re-sponsible for the same, by posting a notice in writing to that effect in some conspicuous place upon said land, or upon the building or other improvement situated thereon'': Section 7419, L. O. L.

As before stated, the principal defense of Nolan is based upon the effect to be given to his alleged posting of the notice on the premises denying responsibility for the improvement contemplated. We think the weight of the evidence is clearly in favor of his con-tention that he posted the notice at the time and place

mentioned. He is supported in his allegation on that subject by the testimony of his brother, of the defendant Blanchard, and of at least two witnesses who are wholly disconnected with any interest in the case who saw the notice in place on the premises, and all that the defendants have in opposition is the testimony of sundry witnesses who were on the premises several weeks later and only state that at that time no notice was to be found.

In the view we take of the question involved, however, it is not material to inquire whether Nolan posted a notice or not. The terms of the contract between himself and Blanchard required the latter without any choice on his part to construct a building. Although this stipulation was coupled with a lease and an option to purchase the premises, yet its legal effect is to make Blanchard a contractor for the erection of a building which, by the terms of the contract, was eventually to become the property of Nolan and to increase the value of his holdings. These conditions made Blanchard the statutory agent of Nolan within the scope of Section 7416, L. O. L., so that one furnishing material or labor at the instance of such an agent for the erection of a building would be entitled to a lien on the realty on which it was situated if Nolan owned the fee. Under such circumstances the law imposed upon Nolan's property certain obligations to those who should furnish materials for the erection of the house at the instance of his statutory agent. Laborers and materialmen, covenanting with Blanchard either directly or through subcontractors, have rights in the premises arising by operation of law which Nolan and Blanchard cannot destroy by contract between themselves. Although each for himself could properly stipulate to waive the provisions of the stat-

ute in his own favor, yet without the consent of materialmen who are strangers to that contract, they cannot waive nor impair the rights which the law confers upon such claimants: *Hume* v. *Seattle Dock Co.*, 68 Or. 477 (137 Pac. 752, 50 L. R. A. (N. S.) 153).

If Blanchard had been only a tenant of the premises, without any obligation on his part to erect a building, and under such circumstances had contracted for the erection of the structure, only his leasehold estate would have been primarily liable, under Section 7417, L. O. L., for the materials and labor furnished. Yet even then the fee owned by Nolan also would have been liable under Section 7419, if he knew of the work, unless he had given the notice mentioned therein, and this because there would then have been no contract to which Nolan was a party contemplating the compulsory erection of the building. This is in accordance with the principle, so often announced by this court, that to support a lien there must be some contractual relation, either directly or indirectly between the lien claimants and the holder of the realty interest sought to be charged. Here, however, Nolan himself has in unmistakable terms directly made an agreement with his contractor Blanchard, to build the house. He holds out Blanchard to the world as the person having charge of the construction of a building on Nolan's land. He cannot repudiate any of the terms or conditions which the law itself visits upon such a convention for the benefit of persons named in the statute. The distinction between cases where improvements are at the option of a tenant or mere acquiescence of the landlord, entailing no right to a lien when proper notices are given, and the other class of cases where the improvement is compulsory on the part of the tenant making him a contractor with the

landlord, with the consequence that liens may be claimed against the fee for materials or labor furnished, is clearly pointed out by Mr. Justice DUNBAR in *Stetson-Post Mill Co.* v. *Brown,* 21 Wash. 619 (59 Pac. 507, 75 Am. St. Rep. 862). See, also, *Hall* v. *Parker,* 94 Pa. 109; *Boyer* v. *Keller,* 258 Ill. 106 (101 N. E. 237); *Curtin-Clark Hdw. Co.* v. *Churchill,* 126 Mo. App. 462 (104 S. W. 476); *Western Lumber & Mill Co.* v. *Merchants' Amusement Co.,* 13 Cal. App. 4 (108 Pac. 891); *Arctic Lbr. Co.* v. *Borden,* 211 Fed. 50 (127 C. C. A. 486).

In support of the contention that the agreement between Nolan and Blanchard is not a building contract, the defendant Nolan has cited the following authorities which we here consider:

*Dierks & Son Lbr. Co.* v. *Morris,* 170 Mo. App. 212 (156 S. W. 75), depends upon the Missouri statute which does not contain a provision like ours, making out of the contractor a statutory agent of the owner. That element is entirely absent from the law of that state under which the decision was rendered, and the agency is there made to depend upon the agreement between the owner and his lessee. The following language of that opinion is significant:

"Now can it be said that merely by reason of the fact that a lessee covenants with a lessor to make certain repairs and improvements which will become the property of the lessor at the end of the term, this necessarily makes the lessee an agent of the lessor so as to bind the latter's freehold interest with a lien for the materials used in the improvement? If so, then no matter what is the character and extent of the improvements, nor how strong the language of the lease denying to the lessee the authority to bind the lessor's interest with a lien, the latter will nevertheless be bound because the lien is a creature of the statute; and whenever the lessee, in contracting for

improvements, acts as the 'agent' of the lessor, within the meaning of that word as used in the statute, the freehold is bound by the lien regardless of the inhibitory terms of the lease.''

In *Marty* v. *Hippodrome Amusement Co.*, 173 Mo. App. 707 (160 S. W. 26), it appears that the lessee intended, but was not bound to make, the contemplated improvements. This also was a Missouri case, and the court used this language:

''In order to hold the freehold it devolved on plaintiff to show that the lessor had constituted the lessee its agent to contract on its behalf for improvements of substantial and present benefit to the freehold. Such agency would be implied from stipulations in the lease which compelled the lessee to make certain specified improvements of apparent value to the freehold, and which provided that such improvements should pass to the lessor at the end of the term''—citing authorities.

In both these Missouri cases the law of agency is made to depend upon the agreement of the parties; but our statute, in Section 7416, L. O. L. has supplied this element of agency which is wanting in the laws of that state, and imputes it to anyone who is bound by the terms of his contract with the owner of the fee to erect a building. In *Albaugh* v. *Litho-Marble Dec. Co.*, 14 App. D. C. 113, the matter of statutory agency is not involved. In *Rothe* v. *Bellingham*, 71 Ala. 55, and *North Dakota Lbr. Co.* v. *Haney*, 23 N. D. 504 (137 N. W. 411), the lessee was merely permitted, but was not bound, to make improvements. In *Northwest Bridge Co.* v. *Tacoma Shipbuilding Co.*, 36 Wash. 333 (78 Pac. 996), the owner of the fee was the State of Washington, and did not contract in its agreement to sell, that any building should be erected. The stat-

utory agency created by our code is not found in the New York statutes under which *Cornell* v. *Barney,* 94 N. Y. 394, was decided. *Fisher* v. *McPhee,* 24 Colo. App. 420 (135 Pac. 132), is a case from Colorado, and merely holds that a tenant who is not bound to erect a building is not an agent for the landlord. Under our statute the principle seems to be that if the owner of the fee contracts with his tenant or would be purchaser, compelling the latter to erect a building, an agency is created as against the owner of the fee by force of the statute, with the result that one who furnishes material or labor at the instance of the agent is entitled to a lien on the fee for the labor or materials furnished. Such is the situation presented in this case, and the same is controlled by the provisions of Section 7416, L. O. L. We conclude that the court was right in holding the fee-simple estate of Nolan liable for materials and labor furnished for the erection of the apartment house on his premises.

2. Some question is made about the accuracy of the description in the claims filed on behalf of the plaintiff and its assignor, chiefly on account of the beginning point mentioned in the metes and bounds. The lien notices fixed it at 50 feet north of the southeast corner of Manning's Addition, while the answer of Nolan states that the house was built on land the description of which began 35 feet north of the southeast corner of Manning's Addition, and he contends that 15 feet of the building rests upon land not included within the notice of lien. No attention was given to this issue at the hearing in the Circuit Court. The claims in question, however, contain the statement that the building is "a three-story concrete apartment house fronting west on Ash Street, all of said property being situated in the City of Portland, county of

Multnomah, State of Oregon." And it is said of the tract itself that it is "inclosed by the east line of Ash Street on the west, Manning's Addition on the north and south, and Mayor Gates' Addition on the east," so that, under the liberal construction given to lien notices, this is sufficient for identification of the property involved. Other contentions, technical and unimportant, are urged, but deeming them without merit, they will not be discussed.

The decree of the Circuit Court is affirmed.

AFFIRMED.   SUSTAINED ON REHEARING.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.

———

Former opinion sustained February 23, 1915.

ON REHEARING.

(146 Pac. 474.)

A rehearing was allowed in this case on October 6, 1914, and reargued and submitted January 26, 1915.

FORMER OPINION SUSTAINED ON REHEARING.

On rehearing there was a brief and an oral argument by *Mr. B. J. Howland.*

On rehearing there was a brief over the names of *Messrs. Lewis & Lewis, Messrs. Cake & Cake* and *Messrs. Seitz & Clark,* with oral arguments by *Mr. Arthur H. Lewis, Mr. John T. McKee* and *Mr. Maurice W. Seitz.*

In Banc.    Opinion of MR. CHIEF JUSTICE MOORE.

A rehearing in this cause was granted in order to determine the sufficiency of the several lien notices involved herein. In *East Side Mill & Lumber Co.* v. *Wilcox,* 69 Or. 266 (138 Pac. 843), it was held that a notice of mechanic's lien for material furnished which did not state of what the material consisted, other than by reference to invoices rendered to the contractor, and not to the owner, was insufficient. If the rule thus promulgated is to prevail, it is possible that some of the notices filed might not create a lien upon the defendant's real property. Though the legal principle so announced is amply supported by the decisions of many courts of last resort in other states, it is believed the rule is carried too far and should not govern the decision of this cause. A careful examination of this question, aided by the briefs of counsel for the respective parties, and supplemented by argument at the rehearing, leads to the conclusion that the several notices sufficiently comply with all the requirements of the statute relating to the manner of perfecting mechancis' liens, and conform to the previous decisions of this court in respect thereto.

The former opinion herein is adhered to.

FORMER OPINION SUSTAINED.

MR. JUSTICE BURNETT took no part in the rehearing of this cause.