Argued July 20, affirmed October 10, rehearing denied November 27, 1916.

# MYERS *v.* STROWBRIDGE ESTATE CO.*

### (160 Pac. 135.)

**Mechanics' Liens—Right to Lien—Contract With Lessee—"Agent"—Statute.**

1. Under Section 7416, L. O. L., conditioning the right to a mechanic's lien upon the labor and material being furnished at the instance of the owner or his agent, a lessee under a lease providing, as a part consideration thereof, that he should make permanent improvements which should revert to and become the property of the lessor, and who causes such improvements to be made, becomes the "agent" of the lessor.

**Mechanics' Liens—Waiver—Knowledge—Provision in Original Contract.**

2. Where the owner and lessor made his lessee an agent to make improvements on the leased premises, a stipulation in the agent's contract that the owner and lessor should not be responsible for any bills contracted in the improvement was not binding upon a subcontractor, unless he assented or agreed to be bound thereby; and the subcontractor's knowledge alone' of the original contractor's waiver of his lien did not constitute a waiver of the subcontractor's lien.

**Mechanics' Liens—Persons Liable—Owner—Notice Denying Liability.**

3. Under Section 7419, L. O. L., providing that every building constructed on land with the knowledge of the owner shall be held to have been constructed at his instance and shall be subject to liens, unless within three days after knowledge of such construction he post a notice that he will not be responsible therefor, premises leased for a term and under which the lessee became the owner's agent and contractor for its improvement were subject to the liens of subcontractors, notwithstanding the posting of such notice.

**Mechanics' Liens—Improvements of Leased Premises—Owner's Notice of Nonliability—Effect.**

4. Under such provision and Section 7416, L. O. L., giving a lien to every person performing labor upon or furnishing material used in the construction of any building at the instance of the owner or his agent, and making every contractor an agent for the owner, and Section 7417, imposing such lien upon the land if it belongs to the person who caused the improvements, the posting of notices by the owner and lessor that it would not be responsible for the payment for labor or materials furnished for improvements made by its lessee, as agent or contractor, would not affect the matter of the waiver of

---

*For authorities passing on the question of construction of stipulation of contractor or subordinate, with reference to his own rights, see note in 50 L. R. A. (N. S.) 153.          REPORTER.

the subcontractors' liens, or prevent a lien upon the improved building, or even inform them that the lessee, as contractor, had stipulated that no lien should attach to the premises.

**Mechanics' Liens—Plans and Specifications—Reference—Effect.**

5.   Where a lessee, as the owner's agent and contractor, employed an architect to prepare plans and specifications for the improvement of the leased premises, and in the heading on the first page the building was described as owned by the lessor, and on the first page of the specifications there was a provision inserted at the lessor's request that he would not be responsible for any bills contracted in the improvement therein specified, and where the two pages of the specifications relating to subcontractor's work were detached from the remainder and given to and signed by them without directing their attention to the provision that the owner and lessor should not be responsible, etc., the reference could serve only the purpose of furnishing the plans and specifications for the work, under the rule that where reference is made in one document to another unattached document for a specific purpose only, such other document becomes a part of the former for such purpose only.

**Mechanics' Liens—Original Contractors — Waiver — Subcontractors—Effect.**

6.   In view of the statute giving a direct lien to persons furnishing labor and material in the alteration of a building, upon the estate of the person causing the alteration to be made, as a privilege or right for their protection, based on the theory of having added to the value of the estate with the consent of the owner, the fact that the original contractor has agreed with the owner to protect him against liens is not an agreement on the part of subcontractors that they will look exclusively to the original contractor and not to the property for their compensation, as in such case there is no meeting of the minds of the contracting parties to that effect.

**Mechanics' Liens—Subcontractors—Waiver.**

7.   The agreement of subcontractors to accept a part of their compensation in the preferred stock of the lessee, the owner's agent and contractor, did not amount to a waiver of their right to a lien to that extent, where the stock was never delivered or tendered as security or payment.

[As to waiver of mechanic's lien by taking notes or other securities, see note in 41 Am. St. Rep. 761.]

From Multnomah: Henry E. McGinn, Judge.

Department 2.   Statement by Mr. Justice Bean.

Plaintiff, J. H. Myers, commenced this suit to foreclose a mechanic's lien.   Defendant, Forth Plumbing & Heating Company, a partnership, designated herein as the Forth Company, filed a cross-complaint to foreclose its liens.   From a decree in favor of the lien

claimants awarding plaintiff $1,819.99, with interest, and $150 attorney's fee, and the Forth Company $5,425.57, with interest, $350 attorney's fee, and costs and disbursements, defendant, the Joseph A. Strowbridge Estate Company, a corporation, hereinafter named as the Strowbridge Estate, appeals.

On January 31, 1912, the Strowbridge Estate was the owner of lots 4, 5 and 6 in block 14 of the City of Portland, Multnomah County, Oregon, and the buildings thereon. On that date it entered into a lease and contract with J. Nudelman, demising the premises for the term of ten years at a rental of from $1,500 to $2,150 a month for the first five years, and from $2,150 to $2,500, as might be arranged, for the last five years. On February 22, 1912, this lease with the consent of the Strowbridge Estate, was assigned to the Yamhill Sanitary Public Market Company, which for brevity's sake we will hereafter call the Market Company. J. Nudelman was the president and managed the principal affairs of this company. The lease contained, among others, the following stipulations:

"That said lessee will and shall make all the necessary changes, repairs, alterations, additions and improvements to, and upon all the said above-described premises, as so desired by said lessee, he doing all the work, furnishing all of the labor, materials of all kinds, placing and furnishing the heating plant, elevator service, electric wiring, plumbing of all kinds and each and everything that he may desire to change said premises to conform with their plans, including the tearing down and removing the small brick building in the rear of number 227 Yamhill Street, and making such improvements as they may desire upon said part of said lot six (6) aforesaid, all of said improvements to be free from all cost or expense to the said lessor, excepting that the said lessor is to keep the roof and sidewalks in good repair.

"All of the work, alterations, changes, additions or improvements to be done upon said premises or any part thereof, are to be under the supervision of a competent architect to be employed by, and his services therefor paid by the said lessee, and the said work and improvements so done are to be performed in a substantial manner, subject, however, to the approval of said lessor, and the plans therefor are to be submitted by the said lessee to the said lessor before any work, changes or improvements are made to said premises. * *

"And the said lessor is to be held absolutely harmless from any claim of damages arising out of contracts, liens, material or labor furnished or otherwise, from the said improvements that are to be, or shall be, made thereon and thereto, and at the end of this lease or upon sooner termination thereof the said improvements, changes or additions made to or upon the said premises or any part thereof shall be turned over to the said lessor, its successors and assigns, by the said lessee, free of all cost, or from any claim or claims to the same or any part thereof. * *

"The said lessee is to forthwith deposit with the said lessor a certified check payable in favor of the said lessor in the sum of six thousand ($6,000) dollars, said money to be held by the said lessor without interest except as aforesaid as security and for the faithful performance by the said lessee in carrying out all of the initial improvements agreed upon herein, * * and to indemnify the said lessor against all liens for work, labor or materials furnished, or both, that the said lessee may allow or cause to be placed on or against the premises or any part thereof, or on any improvement that the said lessee may make thereon. * *

"It is further agreed * * that the said lessee is not to expend a sum of money upon said premises less than twelve thousand five hundred ($12,500) dollars for said improvements upon the same, and such improvements and changes are to commence, and the same to be done as soon thereafter as the turning over of said premises by the said lessor to the said lessee, as shall be reasonable. * * "

Certain changes in the original contract were made by supplemental agreements between the Strowbridge Estate and the Market Company, one of April 10, 1912, wherein it appears as follows:

"It is further agreed and understood by the said parties herein, that the lessor being the owner of the premises herein, may employ a competent man to supervise all the work, alterations and improvements to be done and performed upon all of said leased premises, and to pay for said services. Said supervisor to act for all of the parties herein and to see that the work is properly done and performed in a good first-class manner, and all of said parties to abide by the judgment of said supervisor therein."

In another dated August 12th of the same year it was agreed that preferred stock in the Market Company should be deposited in lieu of the $6,000 deposited as a guaranty by that company. Another stipulation was made on November 25, 1912, in which, among various other things, it was provided that the Strowbridge Estate should pay certain expenses to be incurred by placing iron columns and I beams in the building on Yamhill Street. Still another contract as to a reduction of the rental was made December 14, 1912. The Market Company thereupon employed H. M. Fancher, an architect, to prepare plans and specifications for the work. In the heading on the first page the building is described as owned by the Strowbridge Estate Company. On the first page of these specifications at the request of the owner there was inserted the following clause:

"The owners of the building will not be responsible for any bills contracted in the alteration of the building nor for any of the works herein specified."

Negotiations were had with certain contractors not satisfactory to Strowbridge Estate, and afterward a

contract for the work was entered into with the Wineland Company. This company made important changes in the plans and specifications prepared by Mr. Fancher. After these had been approved by both the Market Company and the Strowbridge Estate, the contract with the Wineland Company was canceled upon the payment of $300 to the latter, the work was divided up and various parts awarded to different contractors.

Under an agreement with the Market Company dated July 13, 1912, plaintiff Myers installed a complete heating system. The two pages of the specifications relating thereto were detached from the remainder and each was identified by the signatures of the contracting parties. While Myers was engaged in installing the heating system, owing to certain changes made by the Market Company and the Strowbridge Estate in the original contract, it became necessary that plaintiff's contract and work be modified accordingly. All changes that were made became a part of the original contract and were approved by the Strowbridge Estate and the Market Company. By reason of the changes made in the first plans and specifications an expenditure of many thousands of dollars was necessitated, more than that called for by the original plans. On August 6, 1912, the Forth Company entered into a contract with the Market Company to furnish materials and do the plumbing work. The Forth Company claimed they saw only that part of the specifications which pertained to such work when they were awarded the contract and were given only the few sheets which contained the directions relating thereto and the description of the plumbing material to be used. In the plumbing contract there were, among other things, the following two clauses:

"Article I.   The contractor shall and will provide all the materials and perform all the work for the installation in the buildings on lots 4, 5 and 6, block 14, City of Portland of the following: [here follows an enumeration of a number of plumbing supplies] as shown on the drawings and described in the specifications prepared by H. M. Fancher, Architect, which drawings and specifications are identified by the signatures of the parties hereto, and become hereby a part of this contract. * *

"Article IX.   It is hereby mutually agreed between the parties hereto that the sum to be paid by the owner to the contractor for said work and materials shall be five thousand three hundred ($5,300.00), subject to additions and deductions as hereinbefore provided, and that such sum shall be paid by the owner to the contractor in current funds and only upon certificates of the architect, as follows: Thirty per cent thereof when roughing in thereof is completed and 30 per cent thereof when work is finished and 40 per cent thereof in preferred stock of the owner bearing 7 per cent interest and to be redeemed by owner in thirty monthly installments beginning thirty days after issue.   If the building is finished in two sections the cash payment shall be prorated according to the proportion of the work done, and the stock shall be issued upon the completion of the work."

In the Myers heating contract it was provided that of the $3,900.00 to be paid him 30 per cent was to be paid in preferred stock of the Market Company, "bearing 7 per cent interest and redeemable in thirty monthly installments, said stock to be issued upon completion of this contract."   None of the preferred stock in the Market Company was ever delivered to plaintiff Myers or to the Forth Company.   Neither was that company in a position to deliver the same.   The term of the lease commenced June 15, 1912.   About June 3d, numerous notices of nonliability were posted by the owner in conspicuous places on the building and

several of them remained so posted during the entire construction, a copy of which notice is as follows:

## "NOTICE.

"Notice is hereby given that the Joseph A. Strowbridge Estate Company, a corporation, the owners of these premises, the same being lots numbered four, five and six in block fourteen, City of Portland, Oregon, with the brick buildings thereon, will not be responsible or pay for any materials or labor used, furnished, delivered or performed by any person or persons, firm or corporation whatsoever, on said premises, or any part thereof, or for any construction, alteration or repairs thereto or for any liens, unpaid bills, accounts, claims, labor or material contracted for or used in the alteration, repairing or the remodification of said premises aforesaid, or any part thereof, at any time or times whatsoever.

"In witness whereof, the said Joseph A. Strowbridge Estate Company, a corporation, pursuant to a resolution of its board of directors, heretofore adopted, have caused this notice to be signed, given and posted by its president and secretary and the corporate seal to be affixed hereto.

"THE JOSEPH A. STROWBRIDGE ESTATE CO.,
"By J. A. STROWBRIDGE,
"President.

"[Seal] THE JOSEPH A. STROWBRIDGE ESTATE CO.,
"By A. B. STROWBRIDGE,
"Secretary.

"Dated June 3, 1912."

The Market Company became financially embarrassed, and was unable to pay for the work done or the materials furnished in the remodeling of the building. Plaintiff Myers states that when he was awarded the contract he saw only that part of the specifications pertaining to the heating system and was given just the two sheets containing the specifications therefor. The first boiler for heating that Myers installed did not comply with the contract and was not satisfactory,

and he installed another. Myers finished his work March 15, 1913, and filed a notice of lien on April 3d of that year. The Forth Company finished their work on February 19, 1913, and filed a notice of their lien on March 15th of that year. The Strowbridge Estate paid on account of the work and materials in this building a fraction over $29,000. This amount included three loans made to the Market Company aggregating $16,000. Defendant George E. Reed superintended the work for the Market Company, and the Strowbridge Estate employed A. Walkly to look after its interest in the reconstruction of the building, pursuant to the stipulation in the lease. He was personally present nearly all the time during the rebuilding of the edifice, and the principal, if not all, the changes made in the plans which occasioned additional expense and also deductions from the original contract price were agreed to by contracts made at the time or settled after that portion of the work was done.

Affirmed.   Rehearing Denied.

For defendant and appellant there was a brief over the names of *Mr. William W. Cotton, Mr. H. W. Strong,* and *Mr. J. A. Strowbridge,* with oral arguments by *Mr. Cotton* and *Mr. Strong.*

For plaintiff and respondent there was a brief and an oral argument by *Mr. W. J. Makelim.*

For defendants and respondents there was a brief over the names of *Messrs. Malarkey, Seabrook & Dibble* and *Messrs. Giltner & Sewall,* with an oral argument by *Mr. Ephraim B. Seabrook.*

Mr. Justice Bean delivered the opinion of the court.

The Strowbridge Estate in its answer to the lien claimants maintains that its property is not subject to

liens for the debts of the Market Company, the lessee, for the following reasons:

"(1) The lien claimants knew of the provisions of the lease exempting the property from liens. (2) Owner's property is exempted from liens by the notices of nonliability and the knowledge conveyed thereby to lien claimants prior to the making of the improvements. (3) Lien claimants waived their right to liens by express contract to that effect. (4) Notices of liens were not filed within 30 days after the completion of the work."

The reasonable value of the work and the right to liens for part of the price agreed to be taken in stock is also in issue. It is stated in the brief of the learned counsel for the defendant Strowbridge Estate as follows:

"The legal effect of the lease in this case is to make the lessee a contractor within the meaning of the mechanic's lien law for the alterations and repairs contemplated by the lease: *Oregon Lumber & Fuel Co. v. Nolan*, 75 Or. 69 (143 Pac. 935). Thus the lessee will be considered as a contractor with the owner and the lien claimants as subcontractors in considering the rights of the parties herein."

This statement practically disposes of the question raised by the notice of nonliability posted on the building.

1, 2. It is contended by counsel for the Strowbridge Estate that subcontractors waived their right to liens for the reason that they had knowledge of the stipulation made by the Market Company in the principal contract prior to the time of furnishing materials or performing labor upon the premises, and they cite *Hume* v. *Seattle Dock Co.*, 68 Or. 477 (137 Pac. 752, 753, 50 L. R. A. (N. S.) 153); *Zanello* v. *Heating Co.*, 70 Or. 69 (139 Pac. 572, 575); *Hughes* v. *Lansing*, 34

Or. 118 (55 Pac. 95, 96, 75 Am. St. Rep. 574). In *Hume* v. *Seattle Dock Co.,* 68 Or. 477 (137 Pac. 752, 753, 50 L. R. A. (N. S.) 153), it was claimed that when the owner and builder stipulate that no mechanic's lien shall be filed, such a stipulation binds the subcontractors. In commenting upon the rule in a few states where the subcontractor is bound by a nonlien stipulation in the original contract, Mr. Justice EAKIN said:

"By this rule the laborer is not consulted, and he must accept the work under the conditions of the original contract, in the making of which he had no voice. It was to protect the workman against such conditions that our lien law was enacted. A lien is not given through the contractor by subrogation, but is a direct and independent lien to each claimant against the property."

The opinion is not authority for the claim made. It does not go to that extent. In *Zanello* v. *Heating Co.,* 70 Or., at page 76 (139 Pac., at page 575), Mr. Justice RAMSEY said:

"The right to a lien was created by statute, and it cannot be annulled by the owner's giving notice that he will not 'recognize' such right, or by saying, in the building contract, that he will not be responsible for the claims of persons furnishing material or labor for the building. A contractor, a subcontractor, or a person furnishing labor or material for a building can waive his right to a lien by agreeing that he will not claim a lien, or by assenting to a provision in a contract stating that no liens shall be claimed or filed upon the building. But a person furnishing labor or material that goes into a building cannot be deprived of his right to file a lien, excepting by his contract, or by acts on his part constituting an estoppel."

By Section 7416, L. O. L., the right to a lien upon a building is conditioned upon the labor or material for which the lien is claimed being furnished "at the in-

stance of the owner of the building * * or his agent.''
Where it is provided in a lease as a part of the consideration thereof that the lessee shall make permanent improvements which shall revert to and become the property of the lessor at the termination of the lease, the lessor thereby causes the improvement to be made, and the lessee becomes the agent of the lessor in the making of such improvements. This section declares who shall be deemed such agent of the owner. The waiver by virtue of a stipulation in the original contract that no lien will be permitted implies that there was an assent to the stipulation, or an agreement on the part of the subcontractor not to claim a lien. The Strowbridge Estate, the lessor, required a deposit of $6,000 to be made by the Market Company to indemnify the lessor against any lien the lessee might cause or allow to be placed on the premises. This provision in the original contract between the owner, Strowbridge Estate, and the Market Company, the contractor, seems to have contemplated that work would be done upon the building and materials furnished for which the structure would be subject to a lien. In such cases a subcontractor does not waive his lien by reason of an agreement between the principal contractor and the owner to the effect that liens should not be filed unless the subcontractor assents or agrees to be bound by such stipulation. Knowledge alone by a subcontractor that the original contractor has waived his lien does not constitute a waiver by a subcontractor of his personal right to a lien for his work and materials in the absence of some agreement on his part that he will also be bound by the original contractor's waiver: *St. Johns Lbr. Co.* v. *Pritz,* 75 Or. 286 (146 Pac. 483); *Schade* v. *Muller,* 75 Or. 225 (146 Pac. 144); *Norton* v. *Clark,* 85 Me. 357 (27 Atl.

252); *Miles* v. *Coutts,* 20 Mont. 47 (49 Pac. 393);
*Hume* v. *Seattle Dock Co.,* 68 Or. 477 (137 Pac. 752,
753, 50 L. R. A. (N. S.) 153); *Zanello* v. *Heating Co.,*
70 Or. 69 (139 Pac. 572, 575).

3. The Nolan Case, which was decided after the
present suit was tried in the lower court, eliminates
the question relating to the posting of notices of non-
liability by the owner of the land under Section 7419,
L. O. L., and disposes of the main part of this contro-
versy.

4. It is contended, however, that the notice was in-
formation to the subcontractors that the original con-
tractor had made a nonlien stipulation with the owner.
The provisions for this notice are intended to relieve
the owner of the land upon which an edifice is con-
structed, when he has not contracted for the improve-
ment, from the liability of having a lien attached to his
land: *Oregon Lumber & Fuel Co.* v. *Nolan,* 75 Or. 69,
(143 Pac. 935, at 937). The posting of such notices
would not prevent the lien upon the building itself as
provided for in Section 7416, L. O. L., and a laborer or
materialman might still rely upon the structure as
security for his pay, and by taking proper measures
have the same sold and removed according to the terms
of Section 7417, L. O. L., which is as follows:

"The land upon which any building or other im-
provement as aforesaid shall be constructed, together
with a convenient space about the same, or so much as
may be required for the convenient use and occupation
thereof (to be determined by the judgment of the Cir-
cuit Court at the time of the foreclosure of such lien),
shall also be subject to the liens created by this act,
if, at the time the work was commenced or the mate-
rials for the same had been commenced to be furnished,
the said land belonged to the person who caused said
building or other improvement to be constructed, al-
tered or repaired; but if such person owned less than

a fee-simple estate in such land, then only his interest therein shall be subject to such lien; and in case such interest shall be a leasehold interest, and the holder thereof shall have forfeited his rights thereto, the purchaser of such building or improvements and leasehold term, or so much thereof as remains unexpired at any sale under the provisions of this act, shall be held to be the assignee of such leasehold term, and as such shall be entitled to pay the lessor all arrears of rent or other money and costs due under said lease, unless the lessor shall have regained possession of the said land and property, or obtained judgment for the possession thereof, prior to the commencement of the construction, alteration or repair of the building or other improvement thereon; in which event, said purchaser shall have the right only to remove the building or other improvement, within thirty days after he shall have purchased the same; and the owner of the land shall receive the rent due him, payable out of the proceeds of the sale, according to the terms of the lease, down to the time of such removal."

Therefore, the posting of the notices by the Strowbridge Estate would not affect the matter of a waiver of the lien. The notice in question would not even inform the claimants that the Market Company, the contractor, had stipulated that no lien should attach to the premises; but, on the other hand, if considered with a knowledge of the provisions of the statute would tend to indicate that the owner of the estate had made no contract for the improvement.

5. As stated above, when the respective contracts were executed by Myers and the Forth Company two or three pages of the specifications, one set relating to the heating system and the other to the plumbing work, were detached and given to them, and those particular pages were signed by the respective subcontractors. Their attention was not particularly directed to the clause inserted on the first page of what was desig-

nated in the heading as "Specifications" and "General Remarks," to the effect that the owner would not be responsible for the work. It may have been noticed in a casual or general way. The rule seems to be well established that where reference is made in one document to another unattached document for a specific purpose only, such other document becomes a part of the former for such special purpose only. The reference to the Fancher specifications in the Myers' and Forth Company's contracts can serve only for the purpose of furnishing the plans and specifications for the plumbing and the installation of the heating system: *Moreing* v. *Weber*, 3 Cal. App. 14 (84 Pac. 220) ; *Stewart* v. *American Bridge Co.*, 108 Md. 200 (69 Atl. 708) ; *Young* v. *Borzone,* 26 Wash. 4 (66 Pac. 135) ; *Meredith* v. *Bitter Root Co.*, 49 Mont. 204 (141 Pac. 643, 648). The covenant in the lease from the Strowbridge Estate to the Market Company to the effect that no lien would be suffered to be placed upon the premises was not known to the claimants until after a large part of their work was performed and materials furnished. It does not appear that either of these claimants assented to the nonlien stipulation. In *Norton* v. *Clark,* 85 Me. 357, 360 (27 Atl. 252), Mr. Justice EMERY, in commenting upon a similar stipulation between an owner and a building contractor, said:

"This particular stipulation, like all other stipulations, binds only those who made it or assented to it."

6. By virtue of our statute a direct lien is given to every person who shall furnish material and perform labor in the construction, alteration or repair of a building. That lien is upon the estate of the person causing the construction, alteration or repair to be made. Such lien is a privilege or right given to such

persons for their protection, and is based upon the theory that they have added to the value of the estate with the consent of the owner, and therefore such estate is liable therefor.  The fact that the original contractor has agreed with the owner to protect him against liens cannot be said to be an agreement, on the part of the subcontractors, materialmen and laborers that they will look exclusively to the original contractor and not to the property for their compensation.  The builder's main contract is to the same effect as the nonlien stipulation, and, if he fully complies therewith, there would be ordinarily no occasion for the filing of a lien by subcontractors, materialmen or laborers.  His nonlien stipulation, so far as to others than himself are concerned, is a mere duplicate of his principal agreement, and subcontractors, materialmen and laborers cannot be bound by such a stipulation, unless they agree to the same.  In such a case, as in any contract, there must be a meeting of the minds of the contracting parties to that effect.

7. The agreement of the subcontractors to accept a portion of their compensation in preferred stock of the Market Company to be redeemed within a certain time did not amount to a waiver of their right to a lien to that extent, as the stock was never delivered or tendered as security or payment to them: *McMurray v. Brown,* 91 U. S. 257 (23 L. Ed. 321) ; *Springer Land Assn.* v. *Ford,* 168 U. S. 513 (42 L. Ed. 562, 18 Sup. Ct. Rep. 170).  The claimants did not waive their right to a lien on the premises.

From a reading of the 800 pages of typewritten testimony and an examination of the several contracts and exhibits in the case we find that each of the lien claimants filed a notice of lien within the statutory time, and that the work was performed and the ma-

terials furnished in accordance with the contract and the changes made therein by agreement. During all the time of the performance of the work and the furnishing of the materials involved herein the reconstruction of the building was superintended on the part of the Market Company by George E. Reed, a competent person, and in behalf of the Strowbridge Estate by Mr. A. Walkly, an experienced builder, who was employed by it for that purpose pursuant to the terms of the original contract between it and the Market Company. Many of the questions as to the compensation arising on account of the modifications in the plans and specifications and the agreed departures therefrom were settled and adjusted by the parties through the instrumentality of the superintendents, and such supervision indicates that the materials furnished were in accordance with the agreement therefor. It is plain that the remodeling of the building was proposed to be made at too small a cost, and that the best materials were not at first specified. This no doubt necessitated many changes, and it may be that the modifications resulted in some incongruity or kind of patchwork, but we find from the evidence that the work was done by the lien claimants according to their contracts, and that the amounts allowed are reasonable.

The decree of the lower court will therefore be affirmed.          Affirmed.   Rehearing Denied.

Mr. Chief Justice Moore, Mr. Justice Harris and Mr. Justice Benson concur.