Submitted on briefs May 22, affirmed May 31, 1927.

# FRANK ESPENHAIN *v.* REUBEN F. BARKER ET AL.

# T. R. PHILLIPS *v.* REUBEN F. BARKER ET AL.

(256 Pac. 766.)

**Specific Performance—Evidence That Plaintiff Abandoned Contract to Build and "Demonstrate" Motor for Inventor Held to Warrant Finding Denying Recovery of Agreed Share in Patent or Corporation.**

1. In suit to specifically enforce contract for share in invention or stock in corporation to which it was transferred, preponderance of evidence that plaintiff was to build motor with rotary ·valve invented by defendant and "demonstrate" it; and that he never built machine which could be demonstrated *held* to warrant findings for defendant; to "demonstrate" meaning to teach by exhibition of samples, to derive from admitted premises by steps of reasoning which admit of no doubt, to prove indubitably.

**Specific Performance—Party Abandoning Contract Held not Entitled to Recover at Law or Specifically Enforce Contract for Share in Invention or in Corporation Acquiring It.**

2. Where contract between inventor and plaintiff was that plaintiff should produce practicable machine containing inventor's patented rotary valve which would operate with ordinary efficiency, plaintiff abandoning work before such machine was made *held* not entitled to specific performance of contract for share in invention or in corporation to which invention was transferred, and had no standing to recover even at law.

**Specific Performance—Specific Performance of Contract for Share in Invention or Stock in Corporation Acquiring It Held Barred, After Nine Years, Both for Laches and Lack of Mutuality.**

3. After delay of nine years, one manufacturing machine to demonstrate patented rotary valve may not enforce specific performance of contract for interest in invention or share of stock in corporation to which it was transferred, both because of laches and of lack of mutuality.

**Specific Performance—Broker Held not Entitled to Specific Performance of Contract for Finding Maker of Machine Who Abandoned Contract.**

4. Where party, agreeing to build machine containing patented rotary valve for share of invention or of corporation to which it was transferred, abandoned work prior to performance, broker finding him was not entitled to specific performance of his contract for share in invention or in stock of corporation for finding such party.

---

Demonstrate, 18 **C. J.**, p. 484, n. 40 New.
Specific Performance, 36 **Cyc.**, p. 622, n. 19, p. 724, n. 88.

2. See 25 **R. C. L.** 336.

From Multnomah: ASHBY C. DICKSON, Judge.

In Banc.

AFFIRMED.

For appellants there was a brief over the names of *Mr. J. G. Beckett* and *Mr. John J. Beckman.*

For respondent there was a brief over the name of *Mr. J. G. Arnold.*

BURNETT, C. J.—By the complaint, the defendant Barker is said to have invented a rotary valve to be used on explosive engines and prior to November 18, 1915, he had applied for a patent which application was then pending. Condensed according to his brief, the plaintiff Espenhain's claim is that on that date he entered into a contract with Barker whereby the former was to "furnish the money, labor and materials to build a motor and rotary valve in connection therewith, according to the specifications, directions and instructions of Barker, so that the principle of the invention could be demonstrated, and that when Espenhain had done that he had completed his contract." Further, he says that in consideration thereof Barker "agreed that upon completion of the motor, he would transfer and assign to the plaintiff an undivided one-eighth interest in and to said invention and all letters patent applied for and to be granted to said defendant upon said rotary valve invention and in event the said defendant Barker caused a corporation to be formed to hold and own such letters patent and to which the same should be assigned, the defendant would cause to be issued and delivered to plaintiff a sufficient number of shares of

the capital stock of said corporation to be equivalent to a one-eighth interest in said invention and patent or patents in addition to a one-eighth interest in whatsoever other money or property might accrue to said defendant by virtue of said patent or patents.''

The complaint goes on, in substance, to state that afterwards, on January 1, 1918, Barker secured a patent and on June 21, 1924, he organized the American Rotary Valve Motors Company, the other defendant corporation, to which he assigned the letters patent. The corporation was capitalized at $250,000, divided into 25,000 shares of the par value of $10 each, of which Barker is said to have received from the corporation 15,000 shares. The plaintiff further avers that Barker has never assigned to him the one-eighth interest in the patent or one eighth of the capital stock of the corporation.

Claiming to have no speedy or adequate remedy at law, the plaintiff prays, in substance, that an accounting be taken of the profits of the concern, that the court decree that the plaintiff is the equitable owner of one eighth of the capital stock; that Barker is trustee for the use and benefit of plaintiff of the capital stock of said defendant corporation held and owned by him to that extent, and that he be required to assign that amount of shares to the plaintiff.

In brief, this is a suit to compel specific performance of the agreement whereby Espenhain was to build a motor and rotary valve and demonstrate the same, for which he was to receive a one-eighth interest in the patent and one eighth of the capital stock in the concern to which the patent might be assigned. The answer denies all the allegations of the complaint except the corporate existence of Barker's co=

defendant and the fact that Barker had applied for a patent. The substance of the new matter in the answer is that the plaintiff agreed to furnish money, labor and other necessary requirements to build and demonstrate satisfactorily a certain rotary valve, as mentioned in the complaint; that he only partially performed his contract and abandoned the same about August, 1916, and has not attempted to do any work toward the completion of his contract since then, in effect pleading laches in not pursuing any remedy on his contract. This new matter was challenged by the reply.

The case of Phillips against the same defendants is, in substance, that Phillips undertook, as a broker, to find someone who would build and demonstrate the invention, for which services he was to receive one eighth of the patent and one eighth of the capital stock of the holding corporation, and that he furnished the other plaintiff, Espenhain, as such person. He makes the identical prayer that is made in Espenhain's complaint.

By stipulation the cases were tried together in the Circuit Court and are here submitted together. The case of Phillips depends upon that of Espenhain. The Circuit Court dismissed the suit and the plaintiffs have appealed.

1. According to the statement in the plaintiffs' brief, Espenhain was not only to build a motor and rotary valve but it must be such a one that the principle of invention could be demonstrated. In our judgment, the preponderance of the evidence shows that Espenhain was to build the motor with the rotary valve and demonstrate the same. He himself testifies as follows:

"A. I was supposed to put a model motor up to demonstrate the principle of his valve.

"Q. You were supposed to furnish the money to build a motor that could be demonstrated so it would demonstrate his idea to the public, is that right? A. Yes, my contract, as I said yesterday, I was to put up a model motor to demonstrate the principle of his invention.

"Q. A motor that could be ran and shown to the public so that it would demonstrate his invention? A. Yes, and the first one didn't run."

The undisputed testimony is that the first one constructed did not run at all and that the second one he built was so defective that it could not be started without the aid of a steam engine and that when the steam was shut off the motor would not run more than about a half hour and then stop. It proved to be totally impracticable and useless as a machine. At this point, some time in the autumn of 1916, the plaintiff ceased to perform any services or furnish any funds for the further prosecution of the work.

The principal point of dispute is about the construction of the contract whereby the motor should be demonstrated. To demonstrate is:

"To derive from admitted premises by steps of reasoning which admit of no doubt, prove indubitably; as, to demonstrate a proposition." Standard Dictionary, p. 679.

Another definition from the same source is:

"to teach by exhibition of examples; as, anatomy is demonstrated by exhibition of the dissected parts of the body, or a new machine or process by its public display and operation."

2. The evident design of the parties was to produce a practicable machine which would operate with ordinary efficiency. This plainly was not accomplished

when the plaintiff abandoned the work. He stipulated not for the performance of labor at a *pro rata* compensation but by an entire contract for the accomplishment of a certain result for which he was to be compensated by the transfer of a specified interest in the invention and in the capital stock of the holding corporation yet to be formed. The rule in such an instance is thus stated by Mr. Justice Boise in *McPhee* v. *Strowbridge,* 7 Or. 156:

"We think the rule in this state is, that where one performs service for another on a special contract, and for any reason, except a voluntary abandonment, fails to fully comply with his contract, and such compliance becomes impracticable, and the service has been of value to him for whom it was rendered, he may recover for such service its reasonable value."

This rule is followed in *Steeples* v. *Newton,* 7 Or. 110 (33 Am. Rep. 705); *Todd* v. *Huntington,* 13 Or. 9 (4 Pac. 295); *Gove* v. *Island City M. & M. Co.,* 19 Or. 363 (24 Pac. 521); *Murray's Estate,* 56 Or. 132 (107 Pac. 19), and *West* v. *McDonald,* 64 Or. 203 (127 Pac. 784, 128 Pac. 818). Not having completed his entire contract and produced a machine which could be demonstrated, the plaintiff has no standing to recover even at law.

3. Further, this suit is for the specific performance of what is avowed in the complaint to be an oral contract involving the transfer of stock and an undivided interest in a patent in return for personal services rendered by the plaintiff. Espenhain is an expert machinist employed as such in the undertaking in question and avers that in performance thereof he rendered ninety days' personal service as such craftsman.

In *Deitz* v. *Stephenson,* 51 Or. 596 (95 Pac. 803) the plaintiff claimed a right to have transferred to him a certain number of shares of the stock of a corporation promoted by the defendant in return for personal services to be rendered by the plaintiff. The court there said:

" * * This obligation necessarily involves a correlative one resting on the latter to employ, or to secure, plaintiff and his wife employment by the corporation in that capacity for at least a sufficient length of time to enable plaintiff to liquidate his liability for this balance of the purchase price of this stock. Here is mutuality of obligation, but is there also mutuality of remedy? Specific performance will not be enforced against one party if it cannot be so enforced by the other. The remedy must be mutual: *Whiteaker* v. *Vanschoiack,* 5 Or. 113; *Barrett* v. *Schleich,* 37 Or. 613 (62 Pac. 792; 2 Beach, Mod. Eq. Jur. 585; Pomeroy, Specific Perf., §§ 162–3. But 'contracts for personal services, where the acts stipulated for require special knowledge, skill, ability, experience, or the exercise of judgment, discretion, integrity, and the like personal qualities on the part of employees, or where the services are confidential, in short, wherever the full performance, according to the spirit of the agreement, rests in the individual will of the contracting party, courts of equity have no direct and efficient means of affirmatively compelling a specific performance': Pomeroy, Specific Perf., § 310.''

The court went on to hold that personal services of the plaintiff were:

"a material consideration of the sale and having no power to compel plaintiff to specifically perform that part of the contract according to the intent of the parties, in favor of defendant, a court of equity should not enforce it in other respects against the latter. Nor is the mere offer to perform or tender of

performance of personal services, the performance of which could not be compelled in equity, sufficient to relieve the case of the lack of mutuality as to remedy.'' Citing authorities.

4. The case is one where Barker had the mental conception, however imperfect, of a useful invention which Espenhain undertook to develop and demonstrate in practical form. After two useless and unfruitful attempts he totally abandoned the enterprise and did nothing more. Now, after nine years of idle indifference, he is in no position to enforce specific performance, not only on account of laches, but also because the remedy is not mutual in this instance.

The decree of the Circuit Court, is, therefore, affirmed.

The result is the same in the case of Phillips, for he did not furnish a man who carried out the contract specified.                              AFFIRMED.