Submitted on briefs February 24; reversed March 15, 1932

## DRAKE *v.* RILEY ET AL.

(9 P. (2d) 130)

*A. W. Schaupp,* of Klamath Falls, for·appellant.
*. W. Lamar Townsend,* of Chiloquin, for respondents.

KELLY, J.   Plaintiff claims a lien for material furnished in the construction of a building and a dam intended to be used for the purposes of a fish hatchery.

■ When the work upon this hatchery was abandoned, is one of the questions involved herein. Mr. John Francisco, a witness in behalf of the appealing defendants, testified that he was working for A. G. Riley, one of the defendants, until about the 15th of December, and that he saw Earl Smith working there "sometime the first of December, first week of December, maybe the 4th or 5th somewhere." Defendant Riley was unable to state when the work ceased.

R. F. Smith, a witness for plaintiff, testified that his brother Earl Smith and one Matt Worton were the last to perform work upon the structure; that Worton told witness to go to the hatchery for an over-supply of shingles; that on December 23, 1930, witness went to the hatchery, had quite a long talk with defendant Worton, the man in charge there; that witness hauled the shingles back; and witness' brother, Earl Smith, quit work there on the 24th of December, 1930.

This constitutes a summary of all the testimony upon the question of when the work was abandoned, and we hold that it establishes such abandonment within thirty days of the filing of plaintiff's claim of lien which was filed on the 12th day of January, 1931.

■ Plaintiff had thirty days after the permanent abandonment of the work in which to file his notice of lien: *James A. C. Tait & Co. v. Stryker,* 117 Or. 338 (243 P. 104), and cases there cited.

A distinction is made by appealing defendants between the case cited and the case at bar, in that, in the case last cited, the owner requested a temporary suspension of deliveries by plaintiff of material to be used in the construction of the building. We hold that this distinction does not render the rule above stated inapplicable to the case at bar.

■ The statement of account in plaintiff's claim of lien refers to the material furnished by invoice numbers and does not describe the kind nor give the quantity of the materials furnished. Appealing defendants argue that this rendered invalid plaintiff's notice of lien. In this they cite and are supported by the case of *East Side Mill Co. v. Wilcox,* 69 Or. 266 (138 P. 843). In that respect, however, the case last cited is not in harmony with other cases decided by this court: *Christman v. Salway, et al.,* 103 Or. 666, 687 (205 P. 541); *Kollock & Co. v. Leyde,* 77 Or. 569 (143 P. 621, 151 P. 733); *Oregon Lumber & Fuel Co. v. Hall,* 76 Or. 138 (148 P. 61); *Oregon Lumber & Fuel Co. v. Nolan,* 75 Or. 69 (143 P. 935, 146 P. 474); *St. Johns Lumber Co. v. Pritz,* 75 Or. 286 (146 P. 483, 486).

■ Another question of fact involved herein is whether plaintiff complied with the provisions of the statute (§ 51-101, Oregon Code 1930, to the effect that a lien claimant shall, not later than five days after

the first delivery of material or supplies for which a lien may be claimed, deliver or mail to the owner or reputed owner of the property upon or about which said material or supplies are to be used a notice in writing stating in substance and effect that such lien claimant has commenced to deliver material and supplies for use thereon with the name of the contractor or agent or other person ordering the same and that a lien may be claimed therefor.

The date of the first invoice of goods delivered by plaintiff is September 22, 1930.

Witness R. F. Smith testified that he mailed such notice to Mr. Riley on September 25, 1930, and submitted a purported copy thereof which was received in evidence without objection. Both Mr. and Mrs. Smith testified that it was their custom to mail such notices. Mr. Riley testified that he did not receive any such notice.

In the light of this record we hold that the mailing of the notice was established.

■ It is suggested that, because Mr. Riley did not receive the notice just mentioned, he was under no obligation to comply with the provisions of section 51-104, Oregon Code 1930, by posting a notice in writing that he would not be responsible for the construction, alteration or repair for which a lien might be claimed. It will be noted that said section 51-104 does not refer to a notice received by mail; but, on the other hand, provides that, unless within three days after the owner shall have obtained knowledge of the construction, alteration or repair, such notice of disclaimer shall have been posted; said construction, alteration or repair shall be deemed to have been constructed at the instance of the owner and the owner's interest shall be subject to such lien.

The undisputed testimony discloses that Mr. Riley and Mrs. Riley both had personal knowledge of the construction of the dam and building in suit and of the delivery of material by plaintiff therefor. The testimony also discloses that no notice of disclaimer was posted by said defendants or either of them.

█ It is urged that the provisions of the statute, requiring the posting of such notice of disclaimer, is unconstitutional for the reason that the owner, having contracted to sell the premises, would have no right to enter the same to post such notice. In the case at bar; there is a reservation in the contract of sale of the right to install a ram, which reservation carried an implied right of entry on the part of defendant, A. G. Riley. There is also a provision in said contract of sale to the effect that the second parties (defendants Worton and Golden Trout Fisheries, Ltd.) contemplate and agree to construct necessary dams and buildings and improvements. This contract was executed by all of the defendants herein and constituted Worton and Golden Trout Fisheries, Ltd., the agents of defendants Riley for the purpose of constructing the building and dam in suit: *Nicolai Neppach Co. v. Poore, et al.*, 120 Or. 163 (251 P. 268); *Myers v. Strowbridge Estate Co.*, 82 Or. 29 (160 P. 135); *Oregon Lumber & Fuel Co. v. Nolan*, 75 Or. 69 (143 P. 935, 146 P. 474.)

The testimony also discloses that defendant Riley was working upon the premises while the work on the hatchery was in progress. The question of the effect of the inability of an owner to enter premises for the purpose of posting a notice of dissent or disclaimer is not in this case.

█ The question, which we are unable to determine from the testimony herein, is how much land should be

subjected to plaintiff's lien. The statutory provision is that:

"The land upon which any building or other improvement as aforesaid shall be constructed, together with a convenient space about the same, or so much as may be required for the convenient use and occupation thereof (to be determined by the judgment of the circuit court at the time of the foreclosure of such lien), shall also be subject to the liens created by this act," etc. Section 51-102, Oregon Code 1930.

Where the land adjacent to and surrounding the land occupied by the building may be used for more than one purpose, or may be put to other uses than that which the structure was originally intended to accommodate, this statutory provision refers to such space as is reasonably necessary to furnish access to and from the building and around the building so that it may be conveniently used for the purpose for which it was intended: *Livesay et al. v. Lee Hing et al.*, opinion by Mr. Justice CAMPBELL rendered contemporaneously herewith: Post p. 450.

■ "The truth is that what area of land is subject to lien in a given case largely depends on the character of the improvement." *Springer Land Ass'n v. Ford*, 168 U. S. 513 (18 S. Ct. 170, 42 L. Ed. 562).

■ Plaintiff's witness, Mr. R. F. Smith, testified that other buildings would be erected on the premises for living quarters. Defendant A. G. Riley testified that there is a large amount of land that could be irrigated from the water from the springs upon the land in suit, and that the place is valuable as a range for fur animals—mink and fox.

Mr. O. F. Warner, a witness for plaintiff, described the premises with the aid of a drawing. The drawing

was not introduced in evidence and without its aid a mere reading of the description detailed by the witness is all but unintelligible. To illustrate, we quote:

"This (indicating) is Mr. Riley's house; this (indicating) is the boundary. Right in there (indicating) is a large spring that supplies water to the hatchery. There are several smaller springs. That (indicating) is the hatchery building." And again, "A. Now the dam is right there (indicating)." And once more: "Q. You are designating 'dam' on there? A. Yes. These springs would be over here (indicating). The water from these springs run down this dam (indicating), and also from this big spring. Then they have built two flumes through the dam and the water comes through these and underneath the hatchery building and on out. This (indicating) is what I believe is called Sprague creek, underneath the building. Over about in here (indicating), as I recall, is the boundary. As I understand it the property line divides that barn practically in half, or at least takes part of the barn in. The property on the right of this drawing was bought by the Golden Trout Fisheries, and the property on the left belongs to Mr. Riley. That includes his house and back here he has some pens."

In this state of the record we have no recourse other than to remand the case, in order that a decree foreclosing plaintiff's lien be entered after the court has determined from such evidence, as the parties may submit, how much land is subject to said lien.

Reversed and remanded.