Argued June 30; affirmed as modified September 15; rehearing
denied September 29, 1942

# BRADFIELD *v.* BOLLIER ET AL.

(128 P. (2d) 942)

Before KELLY, Chief Justice, and BELT, BAILEY, LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*Percy A. Cupper*, of Salem (Carl T. Pope, of Salem, on the brief), for appellant.

*Wallace P. Carson*, of Salem (Carson, Carson & Carson, of Salem, on the brief), for respondent E. Beatrice Bollier.

*Charles H. Heltzel*, of Salem (Heltzel & Heltzel, of Salem, on the brief), for respondent Dave Korb.

KELLY, C. J. On the 11th day of July 1938, the original plaintiff herein, Fred E. Roberts, and defendant, E. Beatrice Bollier, also known as Ethel B. Bollier, entered into a contract that was partly written and partly oral, the written portion of which is as follows:

"This Agreement, Made this 11th day of July, 1938, by and between

Fred E. Roberts, hereinafter referred to as 'Builder', and Ethel B. Bollier, hereinafter referred to as 'Owner'. Witnesseth:

That for the consideration of the payments hereinafter provided, the Builder agrees to construct completely, as hereinafter provided, a house on Lots 7 and 8, in Hurst Addition, Salem, Oregon, according to the blue prints and plans and specifications hereunto annexed which by this reference are made a part of this agreement, and the Owner agrees to pay said Builder for so constructing said house the sum of Thirty-Nine Hundred Fifty ($3950.00) Dollars, payable as follows:

One Thousand ($1,000.00) Dollars in cash when the basement and subfloors of said house are constructed.

One Thousand ($1,000.00) Dollars in cash when the roof is completed.

One Thousand ($1,000.00) Dollars in cash when the house is all plastered. The remaining balance in cash upon the completion of the construction of said house.

The construction of said house shall be completed within a reasonable length of time by the Builder.

The grading and cleaning of said premises is to be done by the Builder, and all extras or changes in or to said plans and specifications made by the Builder at the request of the Owner shall be paid for by the Owner on demand according to their

agreement which shall be noted in writing and signed by the parties and attached to this contract, and if the amount of such payment be not specified in such agreement, then any such extra construction or changes shall be paid for by the Owner according to their reasonable value.

The Builder is to furnish all material entering into the construction of said house, except window shades, linoleums, and heating plant, and except also the expense of light fixtures over ($50.00) Dollars.

The Builder shall construct said house in a good workmanlike manner and shall keep the expense of all labor and materials incurred by him promptly paid so that no liens will be filed against said house, and the Builder agrees to indemnify the Owner against claims for any injuries sustained by his employees during the construction of said house.

Witness our hands in duplicate this 11th day of July, 1938.

Fred E. Roberts
Builder

Ethel B. Bollier
Owner.''

A blueprint was used in the preparation of the foregoing document; but, other than that, no plans or specifications were reduced to paper or annexed to the contract.

As to what the plans and specifications were supplementing the written contract, the testimony is conflicting.

It is agreed that the foregoing contract did not provide for finishing the upper rooms and that a subsequent agreement was made that Roberts should complete and finish the second story of the house. Roberts contends that this was to be finished in fir at a cost of $1,000. Bollier insists that it was to be done for

$1,000 if finished in fir, but if finished in gumwood the price would be $1,050. Gumwood was employed in finishing it.

On May 19, 1939, Roberts filed his notice of lien. Defendant, Bollier, as one of her defenses, alleged and the trial court found that on the 13th day of March 1939, Roberts abandoned said construction contract.

Plaintiff urges, as his first assignment of error, that the court erred in holding that Roberts was entitled to a judgment of only $106.42, and in not holding that he was entitled to a judgment of $2,107.70.

And, as his second assignment of error, plaintiff asserts that the court erred in holding that Roberts was not entitled to a lien.

In support of his first assignment, plaintiff argues that in addition to the amount of the original contract Roberts is entitled to $1,117 on subsequent contracts and extras claimed by him amounting to $1,404.70 less offsets in the sum of $114; that in computing the reasonable value of extras, it is proper to base the same on the actual cost of labor and material plus ten per cent; and that there are no damages to the house which should be offset against Roberts' claim.

In support of his second assignment, plaintiff states that the contractor is entitled to a lien if the work is substantially completed; that there was no abandonment by Roberts on March 13, 1939, or at any other time prior to substantial completion of the contract; and that Roberts is not estopped from asserting a lien because of the terms of the contract, or because of the filing of other liens.

At the conclusion of the testimony, the trial court and counsel had a colloquy wherein the court stated in

effect that while there is some evidence of inconsequential work done later by subcontractors, the trial court was of the opinion that on the 13th day of March 1939, or practically on the 11th, at least on the 13th day of March, Roberts abandoned the project.

Upon being asked by plaintiff's counsel as to the basis for the statement of abandonment, the trial court said:

"It isn't profitable for the Court to enter into an argument with counsel, and I try to avoid that. However, I will say to you that I am perfectly satisfied with the statement of Mr. Moore when he called at his [Roberts'] place on the 13th of March. He [Roberts] stated that he was through with it and all done, and I have had the court reporter look up his testimony. On cross-examination when that conversation was called to his [Roberts'] mind he had the privilege at that time to say to this court that he didn't intend to abandon the project, and that all he intended to say to Mr. Moore was to have Miss Bollier come in the house. Now, he didn't say that, but to-day he changes that testimony and excuses it on that ground. I am not impressed by that kind of testimony. When a witness has the opportunity to state the truth of the matter in the first instance and a week later comes back and elaborates on it and puts in another statement which if true would mitigate the effect of his former statement, the Court isn't satisfied. I don't think it happened just that way. I am not just going into thin air to base any judgment I enter in any case. As counsel stated, there was violation of the contract which specifically provided that no liens would be filed and the work completed in accordance with the contract, free of mechanics liens, and it was not so done. He abandoned the project and permitted other parties to file liens. That is violation of the contract, and that would shut him out of any liens. I have gone the limit in allowing him extras

in the sum of $106.42, which Miss Bollier concedes as extras. He is not entitled to the other matters which are included in his bill of extras."

This colloquy between the court and counsel was concluded as follows:

"Mr. Pope: What is the Court's decision on this claim for loss of income?

The Court: I have taken all the damages in a lump sum and offset it against the extras, giving him a fair discount under the record in this case. If anybody has a complaint coming, it would be Miss Bollier in that respect.

Mr. Pope: We were wondering where we stood exactly. You allowed judgment to Mr. Roberts?

The Court: Yes, it is a personal judgment and not a lien.

Mr. Pope: Your decision takes care of the claim for loss of rental and damages.

The Court: Yes, everything she is asking for against Mr. Roberts. I think she suffered damages, and I am offsetting that against the extras.

Mr. Pope: In other words, you are going to award Mr. Roberts a judgment against Miss Bollier for $106.42?

The Court: That is correct, and neither party to recover costs in this proceeding."

It is apparent that in the colloquy at the conclusion of the testimony from which we have quoted the trial court made no reference to the lien of defendant, Dave Korb, and when the attention of the court was directed to that phase of the case the final decree did not award any judgment to Roberts.

There is, however, little if any difference between an award of judgment to an original contractor and the giving of credit to him upon a judgment against him in favor of a subcontractor.

■ We think that the testimony supports the findings of the trial court. This court has held that where the owner abandons construction, the time within which a material man might file a notice of lien for material furnished at the instance of the original contractor commences to run on the date of abandonment. *James A. C. Tait & Co. v. Stryker*, 117 Or. 338, 243, P. 104; *Drake v. Riley*, 139 Or. 172, 9 P. 2d 130; and that the time within which an original contractor may file a notice of lien likewise commences to run on the date of the abandonment. *Block v. Love*, 136 Or. 685, 1 P. 2d 588.

We have also held that where the owner abandons construction, a subcontractor might file notice of lien for labor performed and material furnished pursuant to his subcontract within thirty days after such abandonment. *Barr v. Lynch*, 163 Or. 607, 97 P. 2d 185.

■■ The instant case is one in which the original contractor abandoned construction and whether he would be entitled to a lien or any other affirmative relief would depend upon whether the abandonment occurred under such circumstances as to come within the exception to the general rule that wilful abandonment is a bar to any recovery. *Tribou & McPhee v. Strowbridge*, 7 Or. 156; *Steeples v. Newton*, 7 Or. 110, 33 Am. Rep. 705; *Todd v. Huntington*, 13 Or. 9, 4 P. 295; *Gove v. Island City, M. & M. Co.*, 19 Or. 363, 24 P. 521; *Murray's Estate*, 56 Or. 132, 107 P. 19; *West v. McDonald*, 64 Or. 203, 127 P. 784, 128 P. 818; *Wuchter v. Fitzgerald*, 83 Or. 672, 163 P. 819; *Easton v. Quackenbush*, 86 Or. 374, 168 P. 631; *Espenhain v. Barker*, (*Phillips v. Barker*), 121 Or. 621, 256 P. 766; *Rose v. U. S. Lumber & Box Co.*, 108 Or. 237, 215 P. 171; *Wolke v. Schmidt*, 112 Or. 99, 228 P. 921; *State ex rel. v. U. S. Fidelity Co.*, 144 Or. 535, 24 P. 2d 1037.

Professor Williston says that—

"* * * the weight of authority strongly supports the statement that a builder, whose breach of contract is merely negligent, can recover the value of his work less the damages caused by his default, but that one who has wilfully abandoned or broken his contract cannot recover. * * *

The courts often do not discuss the question whether one who has intentionally abandoned the contract did so merely to get out of a bad bargain or whether he acted in a mistaken belief that a just cause existed for the abandonment. Where the latter situation exists, however, it would seem that the defaulter might properly be given recovery for his part performance. It seems probable that the tendency of decisions will favor a builder who has not been guilty of conscious moral fault in abandoning the contract or in its performance." Vol. 5, Williston on Contracts, (Rev. Ed.) Section 1475.

In the case at bar, we think that plaintiff is not entitled to affirmative relief even though we disregard his abandonment of construction as a bar to recovery. We call attention to the cases holding that, notwithstanding the owner or original contractor has abandoned the contract, the material man or subcontractor must treat the date of abandonment as the date of the completion of construction in computing the time within which notice of lien may be filed in order to note the distinction between those cases and the instant case wherein the original contractor is shown to have abandoned his contract and yet claims the right to impress a lien upon the property involved and effect a recovery by means of this foreclosure proceeding.

The testimony reflects many disagreements between Roberts and Miss Bollier. Much acerbity developed between them. It is not too much to say that neither

one of them would have been absolutely right and the other entirely wrong every time differences arose between them; hence, we feel justified in holding that it has not been shown that Roberts was guilty of conscious moral fault in abandoning the contract or in its performance.

■ We think, however, that it has not been shown that Roberts substantially performed his contract with Miss Bollier. In fact, there were so many defects in workmanship that to name them would but encumber the record. The recital of them requires six pages of the brief of defendant Bollier.

■ The trial court found that damages sustained by defendant Bollier on account of this series of defaults on Roberts' part were sufficient to counterbalance Roberts' claim except with reference to the items admitted by Miss Bollier to be extras furnished by Roberts and not included in the contract in suit. These items totaled $106.42; and for them the trial court gave plaintiff credit.

Because of the advantage held by the trial court in seeing and hearing the witnesses, we are unwilling to disturb the finding of the trial court.

■ It will be recalled that, as Roberts contends, the amount to be paid upon the contract was $4,950, and as contended by Miss Bollier, it was $5,000. It is admitted that Miss Bollier paid thereon $4,250.

Roberts claimed, in addition to the amount admittedly paid, the further sum of $2,550.01.

Miss Bollier sought by her answer to recover from Roberts the sum of $1,745.

As we view the record, the testimony supports the trial court's finding as above stated.

■ On April 21, 1939, defendant, Dave Korb, filed his notice of lien in the sum of $138.55. The sum of

$44.94 was claimed for materials furnished at the instance of Roberts, and the balance of $93.61 was claimed for services performed by Korb upon the house in suit.

Defendant Korb did not give the requisite notice as to the delivery of the materials furnished, and, hence, did not seek herein to enforce a lien therefor.

The trial court awarded defendant Korb a judgment against Roberts for the sum of $138.55, together with interest thereon at the rate of 6 per cent per annum from March 22, 1939, and decreed that the lien claimed by defendant Korb

"is a valid and subsisting lien to the extent of the following sums of money only, to-wit: The sum of $93.61 of said above mentioned sum of $138.55 so hereinabove awarded to said defendant and cross-complainant Korb against plaintiff, together with interest on said sum of $93.61 at said rate of six per cent per annum from said twenty-second day of March, 1939, until paid and the sum of $50 as the reasonable attorneys' fee herein for said defendant and cross-complainant Korb, and the sum of $1 paid as the fee for the filing and recording by said defendant and cross-complainant Korb of his said notice of lien herein, and the sum of $5.00 paid as the cost of the preparation of his notice of lien."

The decree of the trial court further provided:

"That said lien herein of said defendant and cross-complainant Korb is the only lien of any of said parties herein on either said real property or said dwelling house of defendant Bollier; that said lien herein of said defendant and cross-complainant Korb be foreclosed in the manner prescribed by law for the foreclosure of a mortgage lien upon real property; that said real property and said dwelling house be sold by the Sheriff of Marion County, Oregon, according to law and the practice

of this court; that the proceeds derived from said sale, after payment of the costs and expenses of such sale, be applied first to the payment and satisfaction of said lien of said defendant and cross-complainant Korb; and that the overplus be paid over to defendant Bollier;

That defendant Bollier have and recover of and from plaintiff a sum of money equal to the aggregate of said sums of money embraced by said lien of said defendant and cross-complainant Korb on said real property and said dwelling house of defendant Bollier, to-wit: Said sum of $93.61, together with said interest thereon, and said sum of $50, as said attorneys' fees, and said sum of $1 paid as said fee for such filing and recording of said notice of lien, and said sum of $5 paid as such cost of such preparation of said notice of lien, less the sum of $106.42, representing the aggregate value of certain extra items conceded by defendant Bollier to be payable to plaintiff, hereby awarded as a credit thereon to plaintiff as such value of said extra items.''

We hold that the trial court committed no error in granting defendant Korb the recovery above set forth or in awarding defendant Bollier the judgment against Roberts above quoted.

''An action may be maintained upon a covenant against liability the moment the liability accrues, and payment by the covenantee is not a prerequisite for the maintenance of the action. When the liability arises damages are recoverable to the extent of the liability whether it has been discharged by the covenantee or not. 7 R. C. L. 1184; 15 C. J. 1294.'' *Pearson v. Richards*, 106 Or. 78, 92, 211 P. 167, citing and quoting *Henry v. Hand*, 36 Or. 492, 59 P. 330; *Boone v. Maloney*, 171 Okla. 454, 43 P. 2d 749, and authorities there cited.

■ We think, however, that the amount received by defendant Korb from defendant Bollier upon his said

claim for services and interest thereupon should be credited not only upon his judgment against defendant Bollier but also upon his the said Korb's judgment rendered herein against Roberts, and if the same is paid before sale on execution, payment should be made to the clerk of the trial court for the use and benefit of said defendant Korb, and said clerk should enter a notation of such payment upon the record of each of such judgments; and if the same is realized by defendant Korb through sale on execution, such credit should be entered by the clerk of the trial court upon the record of said judgment against Roberts. The decree of the trial court is modified to provide for payment in the manner above stated and the entry of such credit or credits.

The decree of the circuit court as thus modified is affirmed.

It is further ordered that defendant Bollier recover judgment for her costs and disbursements on appeal from plaintiff, and, except as thus ordered, no costs or disbursements on appeal are allowed.