JOHN B. CORNELL et al., Appellants, *v.* ASHBEL H. BARNEY
et al., Respondents.

To give a lien upon a building under the mechanic's lien law for the city
of New York, of 1875 (§ 1, chap. 379, Laws of 1875), the work must
have been done or materials furnished at the instance of the owner of
the building or improvement, or of his agent.

To give a lien upon the land on which the building stands the building
must have been constructed for and at the expense of the owner, or
under contract with him. (§ 3.)

Materials were furnished by plaintiffs, under a contract with a lessee, for a
building in process of construction by the latter, in pursuance of pro-
visions in his lease, by which he covenanted to erect a building on the
demised premises of at least a specified value. The lessor covenanted
to loan a specified sum as the building advanced, to be secured by mort-
gage on the lessee's interest  The building, at the end of the last of
certain renewals provided for, or sooner in case the lessee failed to per-
form his covenants, was to revert to and become the property of the
lessor.  In an action to foreclose an alleged mechanic's lien, *held*, in the
absence of evidence that the lessor had some connection with plaintiff's
contract, plaintiff was not entitled to have or enforce a lien against the
interest of the lessor in the land or building, but only against that of the
lessee.

*Burkitt* v. *Harper* (79 N. Y. 273), *Otis* v. *Dodd* (90 id. 336), distinguished.

(Argued December 10, 1883 ; decided January 15, 1884.)

APPEAL from judgment of the General Term of the Su-
preme Court, in the first judicial department, entered upon an
order made December 23, 1881, which affirmed a judgment in
favor of defendant Barney, entered upon a decision of the
court on trial at Special Term. (Reported below, 26 Hun, 134.)

This was an action to foreclose an alleged mechanic's lien.

The material facts are stated in the opinion.

*Lemuel Skidmore* for appellants.  By chapter 379 of the
Laws of 1875, the legislature intended to enlarge the remedy
afforded by the former acts on the same subject. (*Heckman* v.
*Pinkney*, 81 N. Y. 216 ; *Hackett* v. *Badeau*, 63 id. 478 ;
*Loonie* v. *Hogan*, 9 id. 440 ; *Knapp* v. *Brown*, 45 id. 207 ;
*Stuyvesant* v. *Browning*, 1 J. & S. 204 ; 54 N. Y. 363 ; *Mul-*

*doon* v. *Pitt*, 4 Daly, 104; 54 N. Y. 269.) In order to confirm this view of the legislative intention, and to ascertain its compass, it is allowable to refer to contemporaneous legislation, although not precisely *in pari materia*. (*Chase* v. *Lord*, 6 Abb. N. C. 276.) The legislature intended altogether to discard the requirements of "a contract, express or implied," on the part of the owner of the land, and to enlarge the remedy of the workman or furnisher of materials in the direction of all cases where the owner of the land should consent to the work, or at all events instigate, or in any way procure it to be done on his land. (*Burkitt* v. *Harper*, 79 N. Y. 273; *Otis* v. *Dodd*, 24 Hun, 538; *Loonie* v. *Hogan*, 9 N. Y. 435; *Riley* v. *Watson*, 3 Hun, 570; *Reno* v. *Pindar*, 20 N. Y. 301; *Pierson* v. *People*, 18 Hun, 248; *Eckhard* v. *Donohue*, 9 Daly, 214; Laws of 1863, chap. 500, § 5.) Salem, the lessee, was the agent of Mr. Barney, under the true meaning of section 1 of act of 1875. (*Moore* v. *Jackson*, 49 Cal. 109.) The condition imposed by the latter part of section 1 of act of 1875 was intended simply to limit the land-owner's liability to the amount which he should be liable to pay after deducting such payments as he had made before the lien was filed. (*Heckman* v. *Pinkney*, 81 N. Y. 216; *Doughty* v. *Devlin*, 1 E. D. Smith, 644; Story's Eq. Jur., §§ 799–1234.) Before Mr. Barney could claim that Salem had forfeited his contract, he should show that by some act or notice he put Salem distinctly in default. (*Schuyler* v. *Hayward*, 67 N. Y. 254; *Wheeler* v. *Scofield*, id. 314.) Neither could Mr. Barney claim that the lease to Salem was terminated by forfeiture for breach of covenant to erect the building, unless he proved entry or ejectment by himself for such forfeiture, since there was a provision for re-entry. (*Garner* v. *Hannah*, 6 Duer, 262; *Parmelee* v. *O. & S. R. R.*, 6 N. Y. 80; *Conger* v. *Duryee*, 12 Abb. N. C. 43; *Giles* v. *Austin*, 62 N. Y. 486.) The general clause in the lease from Mr. Barney to Mr. Salem providing for a forfeiture of the lessee's interest upon breach of any covenant was not in the nature of a limitation, but the estate of the lessee was terminable only upon the election of the lessor, and

as long as he omitted to so elect it continued in the lessee. (*Horton* v. *N. Y. C. R. R.*, 12 Abb. N. C. 31; *Clough* v. *L., etc., R. R.*, 1 Moak's Eng. R. 157, 158.) The Recording Act has no application to this case. (*Dunlop* v. *Avery*, 89 N. Y. 598.) If the court hold that Salem was "owner of the building" at the time of filing, plaintiff's lien attached to all the interest which Salem "then had" in the building, and could not be divested by any subsequent act or default of Salem or of Mr. Barney. (*London & Westminster Co.* v. *Drake*, 6 C. B. [N. S.] 798.) If Salem possessed the right to remove the building there is no doubt the lienors would have the same right. (*Ombony* v. *Jones*, 19 N. Y. 234; *Haven* v. *Emery*, 33 N. H. 68; *Hunt* v. *Bay State Iron Co.*, 97 Mass. 282.) The default was an admission of the facts pleaded by plaintiffs. (*Bullard* v. *Sherwood*, 85 N. Y. 256.)

*Edward Patterson* for respondents. Mr. Barney's estate in the land was not subject to a lien for the plaintiffs' materials, nor was he liable to them for the value of such materials under the act of 1875. (*Burbridge* v. *Marcy*, 54 How. Pr. 446; *Heckman* v. *Pinkney*, 81 N. Y. 211; *Dugan* v. *Brophy*, 55 How. Pr. 121; *Knapp* v. *Brown*, 45 N. Y. 207; *Stuyvesant* v. *Browning*, 1 J. & S. 203; *Muldoon* v. *Pitt*, 54 N. Y. 272; *Burkett* v. *Harper*, 14 Hun, 584.) Even if Salem is to be regarded technically as a contractor with Barney, to erect a brewery on his land, and the plaintiffs as sub-contractors, they have failed to establish their right to a lien. They were bound to show that Salem had made full performance of his contract with Barney. (*Randolph* v. *Garvey*, 10 Abb. 179; *Broderick* v. *Poillon*, 2 E. D. Smith, 554; *Quinn* v. *Mayor*, id. 558; *Rudd* v. *Davis*, 3 Hill, 287; *Smith* v. *Cole*, 2 Hilt. 365.) It was incumbent upon the plaintiffs to show also that there was something due from Barney to Salem under a contract. (*Smith* v. *Cole*, 2 Hilt. 365; *Broderick* v. *Poillon*, 2 E. D. Smith, 554; *Ferguson* v. *Buck*, 4 id. 721; *Bailey* v. *Johnson*, 1 Daly, 61.) No lien was created by the filing of the notice of claim, and hence there is no foundation for this ac-

tion. (*Mushlitt* v. *Silverman*, 50 N. Y. 360; *Benton* v. *Wick-nese*, 54 id. 226; *Dowdney* v. *McCullum*, 59 id. 372; *Cork-right* v. *Thompson*, 1 E. D. Smith, 661; *Grant* v. *Vander-cooke*, 57 Barb. 165; *Meyer* v. *Beach*, 79 N. Y. 409; *Bor-roughs* v. *Tostevan*, 75 id. 567.)

EARL, J. In June, 1877, the respondent Barney entered into an agreement with the defendant Salem, whereby he leased to Salem a lot of land, situate in the city of New York, to hold from that date for fifteen years from the first day of January thereafter, for the yearly rent, payable quarterly, of $4,100, besides taxes and assessments, and Salem agreed before the first day of January to erect upon the lot a building which was to cost and to be fully worth the sum of $50,000. Barney agreed to loan and advance to Salem from time to time during the progress of the building, the sum of $25,000, no part of which, however, was to be advanced, except on the presentation by Salem, if required, of evidence that he had expended an equal sum upon the building. When the sum of $25,000 had thus been fully loaned, Salem was to execute a mortgage upon his interest in the building to Barney to secure the payment thereof in annual payments. In case Salem erected the building and kept all his covenants, Barney agreed that at the expiration of the term he should have another lease for a further term of fifteen years, at a rent to be agreed upon, and in case they could not agree, then at a rent to be fixed by arbitrators, not less than $4,100 per annum — the rent to be fixed for the lot exclusive of the buildings and improvements thereon; and provision was made for five more similar renewals for rent to be agreed upon or fixed in the same way. During the continuance of the lease Salem was to keep an insurance against loss by fire upon the buildings upon the lot for the sum of $50,000, and in case of loss the amount of the insurance money received was to be used in repairing, or rebuilding the buildings. In case Salem failed to renew the lease at the end of any term, or in case he failed to keep the covenants, and also at the end of the final term, the lot with all the buildings

thereon was to revert to and become the absolute property of Barney, his heirs or assigns.

Under this agreement, which was recorded in the proper office in the city of New York, on the 19th day of September, Salem took possesssion of the lot, and commenced to erect a building thereon. On the 22d day of October he entered into a contract with the plaintiffs to furnish the iron to be used in the building, for which they were to be paid by him the sum of $8,000. In performance of their contract they furnished iron, for which they were entitled to be paid $5,500, and for which they were paid only the sum of $1,500, the first installment. To secure the balance, on the 13th day of December they filed a lien upon the lot and building in the clerk's office of the city and county of New York, and this action was subsequently commenced to enforce such lien.

We are of opinion that the court below properly decided that the plaintiffs were not entitled to have or enforce any lien against the interest of Barney in the lot or building thereon, for the reason that the iron was not furnished under any contract with him, or at his instance, and that he did not cause the building to be constructed.

Section 1 of the Lien Act, applicable to the city of New York (Chap. 379 of the Laws of 1875), provides that "every person performing labor upon, or furnishing materials to be used in the construction, etc., of any building, etc., shall have a lien on the same for the work or labor done, or materials furnished by each, respectively, whether done or furnished at the instance of the owner of the building or other improvement, or his agent." To give a lien under this section, the work must have been done or materials furnished at the instance of the owner of the building or the improvement, or at the instance of his agent, and the lien is upon the building or other improvement. Such is the plain language, and there is no room for construction. Here the iron was not furnished at the instance of Barney. His contract with Salem did not even require any iron to be used in the erection of the building, and it does not appear that he had any thing whatever to

do with Salem's contract with the plaintiffs, or with the procurement of the iron from them, or that he knew any thing about it. It is true that Salem covenanted with Barney to erect the building, and that Barney agreed to advance money to be applied toward the erection of the same, and that he was to have a mortgage on the same; yet the building was not erected for Barney, and was not, before the termination of the lease, to belong to him, and in no proper sense could the material furnished for the same be said to be furnished at his instance. In harmony with this view is section 2 of the act which provides that " any person, who at the request of the owner of any lot, etc., grades, fills in, or otherwise improves the same, or the sidewalk or street in front of or adjoining the same, shall have a lien upon such lot for his work done and materials furnished." Here the word " request " is used in substantially the same sense as the word " instance " in the prior section, and was intended to have the same scope.

Section 1 having provided for a lien upon the building, section 3 provides for a lien upon the lot upon which the building stands, as follows : " The land upon which any building, etc., is constructed, etc., shall be subject to the liens if at the time the work was commenced or materials for the same had commenced to be furnished, the land belonged to the person who caused said building, etc., to be constructed, etc. ; but, if such person owned less than a fee-simple estate in such land, then only his interest therein shall be subject to such lien." The plaintiffs can have no lien under this section upon Barney's interest in the land, because he did not in any proper sense cause the building to be constructed. Within the meaning of this section the building must be constructed for and at the expense of the owner of the land or under contract with him. Salem caused this building to be constructed, and the plaintiffs could have a lien upon his interest in the land under his lease.

In construing the portion of this act now under consideration we are not much aided by a reference to other lien acts. The language giving the lien in this act has not the same scope as that contained in the act chapter 478 of the Laws of 1862, in

which a lien is given where a building is erected upon land by the permission of the owner, or as that contained in the act chapter 489 of the Laws of 1873, in which a lien is given where a building is erected upon land with the consent of the owner, which acts came under our consideration in the cases of *Burkitt* v. *Harper* (79 N. Y. 273), and *Otis* v. *Dodd* (90 id. 336). The widely different language used in this act enacted subsequently to those acts must be held to indicate a different legislative purpose.

The act chapter 500 of the Laws of 1863 provided that "any person who shall as contractor, laborer, workman, merchant or trader, in pursuance of or in conformity with the terms of any contract or employment by the owner, or by or in accordance with the directions of the owner or his agent, perform any labor or furnish any material toward the erection, etc., of any building, shall have a lien" upon the house and the lot upon which it stands. The words "with the direction of the owner or his agent" in that act must certainly have as broad scope as the word "instance" in this act, and they were held to give a lien only in case there was a contract, express or implied, with the owner of the land, for doing the work or furnishing the materials. (*Knapp* v. *Brown*, 45 N. Y. 207 ; *Muldoon* v. *Pitt*, 54 id. 269.) In *Heckmann* v. *Pinkney* (81 id. 216), we held, considering all the provisions of the act of 1875, that a subcontractor with one who had contracted with the owner could have a lien upon the interest of the owner in the lot or building for any amount which the owner was liable to pay ; but the opinion in that case does not give any countenance to the claim that the interest of the owner can be subjected to a lien, except when he has contracted for the building or improvement for which the work and materials are furnished, or except they have been furnished at his instance or request.

It must at least be said that the construction of this act, so far as the same is now involved, is not free from doubt, and, therefore, the construction given to it by the courts in the locality where the act alone operates, which are constantly dealing with the act in view of all the circumstances and difficulties

bearing upon its execution, should have great weight with us, and so far as we can ascertain, it has been uniformly construed there in accordance with the views above expressed. (*Brown* v. *Zeiss*, 9 Daly, 240; *Burbridge* v. *Marcy*, 54 How. Pr. 446; *Dugan* v. *Brophy*, 55 id. 121; opinion of DANIELS, J., in this case.)

It is better to leave any amelioration or improvement of the law which may be needed to the legislature, than by a forced and unnatural construction of the language used in this act to seek for a legislative purpose not apparently expressed.

Salem suffered default, and hence the plaintiffs claim that they should at least have had judgment against him. The claim is well founded. At the time they noticed this cause for trial they also noticed a motion for judgment against Salem for the relief demanded in their complaint. There is nothing showing that that motion was brought on, and there is no exception which brings before us for review any error as to the claim of the plaintiffs against Salem. They are entitled to relief against him, and they may yet apply for that. Nothing has yet transpired in this action to bar them of such relief; and that there may be no mistake about it, the judgment in this action, and the affirmance thereof must be without any prejudice to such relief as the plaintiffs may, upon Salem's default, be entitled to have in this action against him, and the judgment should be so affirmed, with costs.

All concur.

Judgment accordingly.