In the Matter of PAERDEGAT BOAT AND RACQUET CLUB, INC., et al., Respondents, v JOSEPH ZARRELLI, Appellant.

Second Department, December 21, 1981

### APPEARANCES OF COUNSEL

*Corash & Hollender (Paul Hollender* of counsel), for appellant.

*Bernard Gold* for respondents.

### OPINION OF THE COURT

WEINSTEIN, J.

The law has long been settled that a mechanic's lien cannot attach to property owned by a municipality, at least when the property is being used for a public purpose (see *Poillon v Mayor of City of N. Y.,* 47 NY 666; *Leonard v City of Brooklyn,* 71 NY 498; *Sexauer & Lemke v Burke & Sons Co.,* 228 NY 341; *Kennedy & Co. v New York World's Fair 1939,* 260 App Div 386, affd 288 NY 494; *Matter of Hempstead Resources Recovery Corp. v Scalamandre & Sons,* 104 Misc 2d 278; *Ingram & Greene v Wynne,* 47 Misc 2d 200; 10 McQuillin, Municipal Corporations [3d ed, rev], § 28.58). We hold today, however, that when publicly owned land is leased to a private entity to be used for a private purpose, a

mechanic's lien may attach to the leasehold interest therein.

The petitioner Paerdegat Boat and Racquet Club, Inc. (hereafter Paerdegat) leased a parcel of real property in the Borough of Brooklyn from the City of New York, which owned the plot. Paerdegat erected thereon a building for use as a racquet club. It then engaged the services of appellant Joseph Zarrelli and petitioner Electro-Thermal Systems, Inc., to install, among other things, sky lights on the building. Zarrelli allegedly abandoned the job, leaving it to be completed by Electro-Thermal Systems; Zarrelli denies this. In any event, Zarrelli, claiming that he was owed the sum of $14,000, thereupon filed two liens against the property, each for the amount allegedly owed; one was a public improvement lien, as contemplated by section 5 of the Lien Law, and the second was a mechanic's lien, as provided for in section 3 thereof.

The petitioners brought this proceeding to have the liens discharged. Special Term, reasoning that a mechanic's lien may not attach to city-owned property or to the improvements erected thereon, granted the application for discharge of the mechanic's lien. It also discharged the public improvement lien, and Zarrelli has appealed to this court from the order entered thereon. We need not devote a great deal of discussion to that part of Special Term's order which discharged the public improvement lien. Section 5 of the Lien Law limits such a lien to instances where work is done pursuant to a contract with the State or a public corporation. There is no indication herein that the work in question involved any public contract; indeed, the contrary would seem to be the case. Accordingly, Special Term ruled correctly when it discharged the public improvement lien.

Special Term's summary discharge of the mechanic's lien, however, merits somewhat greater discussion. Important questions of policy and law have been raised, and we take this opportunity to expound the legal and policy considerations which have a bearing on their resolution.

To begin with, we note that although a lien may be filed against a leasehold interest in property for money allegedly owed by the lessee (see *Cornell v Barney,* 94 NY 394),

such a lien would be subject to the general rule that a lien shall extend only to the right, title, or interest of the owner[1] in the property, but no further (see Lien Law, § 4). Accordingly, if a lien is attached to certain property as against a lessee of such property, any enforcement pursuant to section 41 of the Lien Law would be effective only insofar as the lessee has an interest therein, and would not at all encumber the interest of the lessor (see *Cornell v Barney, supra; Johnson v Alexander,* 23 App Div 538), unless the work done by the lienor was pursuant to a contract to which the lessor or his agent was a party (see *Knapp v Brown,* 45 NY 207). It is clear, then, that even if the mechanic's lien in question is to be sustained, it will be ineffective as against any rights and interests that the City of New York holds in the subject property.

We may now reach the central question posed by this appeal: can property owned by a municipal corporation and leased to a private entity for private purposes validly be encumbered by a mechanic's lien to the extent of the leasehold interest? In order to answer that question, we must bear in mind the reason why publicly owned land being used for public purposes has been held to be inalienable. That reason is postulated on the assumption that the purpose of public lands and buildings is to further the public interest; that is, that municipally owned property is utilized by municipal governments in order to facilitate their carrying out the duties with which they are charged. Any interference with the municipality's right to free and unencumbered use of its property would thus constitute a detriment to the public served by the municipal government. Therefore, no matter how just and reasonable the claim of a contractor who has labored on municipal property might be, "[t]he public's interest in municipal land is of greater value or concern than that of a single person seeking to assert the additional remedy of a mechanic's lien" *(Matter of Hempstead Resources Recovery Corp. v Scalamandre & Sons,* 104 Misc 2d 278, 279, *supra).* This consideration is reflected in section 383 of the New York

---

1. The term "owner," in the context of the law of liens, does not necessarily imply a fee owner, but rather the person against whom the lien is asserted, even if his interest in the "alienated" property is a leasehold or other nonfee interest (see Lien Law, § 2, subd 3).

City Charter, which provides that "[t]he rights of the city" on all publicly-owned property "are hereby declared to be inalienable".

It can be seen that the principle of inalienability of public property in order to avoid interference with the functioning of government is not applicable to the case at bar. Paerdegat is a private entity. Its facilities are used for private purposes. Any benefit which the City of New York might have obtained from the installation by Zarrelli of sky lights in the building was wholly incidental, and not at all the purpose of the work. Public funds were not expended for Zarrelli's work, and the city was not a party to the contract involving it. As was stated above, enforcement of the lien against the leasehold interest would in no way affect the city's interest in the property, for the lien would terminate, at the latest, with the lease. In short, there is nothing public about the use to which Paerdegat is putting the property, and hence, any encumberance thereon would in no way affect the public. We therefore see no reason why the mechanisms set forth in the Lien Law should not be available to an alleged creditor of Paerdegat.

Moreover, we believe that nothing in the New York City Charter mandates a contrary holding. The inalienability provided for by section 383 extends only to "[t]he rights of the city" in its property, but since this lien could not be enforced against the city's interests therein, no rights of the city are involved. We can perceive of only one way in which a municipality could suffer if a lien were filed against the interest of its lessee. We recognize that New York City's control over its property might indeed be compromised if this court were to permit Zarrelli's mechanic's lien to attach to the leasehold, since the land could fall into the hands of an unknown individual for the remaining period of the lease without approval by the Board of Estimate, as required by subdivision a of section 384 of the New York City Charter; this danger was recognized by the court in *Matter of Hempstead Resources Recovery Corp. v Scalamandre & Sons (supra)*. Although such individual would be bound by the terms of the lease with Paerdegat, with respect to uses to which the property could be put and to rent, this individual could prove to be less

conscientious in adhering to the terms of the lease than was Paerdegat, and yet enforcement of the lien would mean that the Board of Estimate would have had no opportunity to guard against such eventuality.

This consideration does not carry such great weight in our view, however, for the charter itself provides for an instance where city-owned property may be leased to an unknown individual without specific prior approval of him by the Board of Estimate. Pursuant to section 384 (subd b, par 1) of the charter, the Board of Estimate, once it had decided to lease property owned by the city, must lease it "only" for the highest rental offer at public auction or by sealed bids. Pursuant to that paragraph, the city may restrict the use to which such property may be put, and even effectively restrict the class of persons who may bid on the property (see *Fur-Lex Realty v Lindsay,* 81 Misc 2d 904), but if a potential bidder's offer is sufficiently high it cannot reject his offer (but see General Municipal Law, § 103, and *Abco Bus. Co. v Macchiarola,* 52 NY2d 938, revg 75 AD2d 831, with respect to accepting bids for city contracts). The city thus runs the risk, in such an instance, of leasing its property to persons unknown to the Board of Estimate. There should, accordingly, be no objection to city property being subjected to a lien by an unknown lienor, as long as the lien is limited to the term of the private lease of the property. In other words, when the city has already elected to alienate its property by leasing it, there is no sound policy reason to hold that the property is inalienable.

In the absence of such sound policy reasons, we hold that the policy of affording creditors the opportunity to encumber property on which they have performed labor or furnished materials, in order to facilitate satisfaction of the debt, is controlling. We fear that a contrary holding could result in a situation where private lessees of municipally owned property would be exempt from paying for work performed on the property. Accordingly, Special Term erred in discharging the mechanic's lien filed by appellant Zarrelli against the property in question.

One further point should be made. This court held, in *Kennedy & Co. v New York World's Fair 1939* (260 App Div

386, 389, affd 288 NY 494, *supra),* that when an issue arises as to the alienability of municipally owned land, "the use is not the determining factor"; municipally owned land, even if used for private purposes, would, in the court's opinion, be inalienable. We do not believe that our holding today is necessarily in conflict with the *Kennedy & Co.* case. To begin with, that court found that the property in question, the Cuban Village at the 1939 World's Fair, had been used for a public purpose, so that the court's holding, insofar as it applied to land used for a private purpose, could be viewed as an obiter dictum. Additionally, the appellants in that case were the City of New York and the public World's Fair Corporation. The purely private parties against whom the lien was filed, and who stood in the same position as Paerdegat herein, were not parties to that appeal. Therefore, the issue of the validity of a lien filed against a purely private lessee of public property was never placed before the court.

Accordingly, so much of Special Term's decision as discharged the mechanic's lien is reversed, and said lien is held to be enforceable to the extent of Paerdegat's leasehold interest in the property.

HOPKINS, J. P. (concurring in part and dissenting in part). I vote to affirm the order. A mechanic's lien was unknown at common law and survives only by statute *(Tubridy v Wright,* 144 NY 519, 521; *Spruck v McRoberts,* 139 NY 193, 197). True it is that the statute commands a liberal construction of its provisions (Lien Law, § 23); nevertheless, it cannot be stretched to include cases not clearly within its general scope and purpose *(Raymond Concrete Pile Co. v Federation Bank & Trust Co.,* 288 NY 452, 463; *Troy Public Works Co. v City of Yonkers,* 145 App Div 527, 528, affd 207 NY 81).

The statute differentiates between private liens and public liens (e.g., compare Lien Law, § 3, with Lien Law, § 5), and the question before us is whether it sanctions the filing of a private lien against the interest of Paerdegat under a lease of property owned by the City of New York. We would expect that in such an important matter the statute would be clear and explicit in authorizing such

filing. It is not, and the statutory language, properly construed, leads to the contrary conclusion.

Turning to the statutory definitions — which are the foundation of the rights created by liens — we find that "'real property,' when used in this chapter, includes real estate, lands, tenements and hereditaments, corporeal and incorporeal *** and the right of franchise granted by a public corporation for the use of the streets or public places thereof, and all structures placed thereon for the use of such right or franchise" (Lien Law, § 2, subd 2). A "'public corporation,' when used in this chapter, means a municipal corporation" (Lien Law, § 2, subd 6). The definition of real property does not include any such property of a public corporation, except a franchise granted by it. Hence, the definition negatives any scope for a private lien against a lease of municipal property. Even more tellingly, the statute does not expressly or implicitly distinguish between lease of municipal property used for public purposes and lease of municipal property used for nonpublic purposes.

On the other hand, the statutory definitions plainly separate public and private improvements. Thus, a public improvement "means an improvement of any real property belonging to the state or a public corporation" (Lien Law, § 2, subd 7) while a private improvement is called "[i]mprovement of real property" and "means any improvement of real property not belonging to the state or a public corporation" (Lien Law, § 2, subd 8). These definitional compartments describe distinct concepts and follow the underlying scheme of the statute which directs that a private lien shall attach to real property privately owned, whereas a public lien shall attach only to the funds of the municipal corporation due or to become due under the contract for the improvement *(Kennedy & Co. v New York World's Fair 1939,* 260 App Div 386, 388, affd 288 NY 494).

The reasons for the substitution of the funds of the municipal corporation in place of its real property were early delineated.[2] It was recognized that public property, if

---

2. It should be noted that the statute restricts the filing of a lien on railroad property to the performance of labor, thus again emphasizing the intent of the Legislature to provide specifically for the boundaries of property and services to be included within the statute (Lien Law, § 6).

subject to lien and the threat of foreclosure, would be intolerably burdened and harassed, that public property was traditionally immune from execution and seizure, and that the comfort and safety of the public might be interrupted or destroyed *(Leonard v City of Brooklyn,* 71 NY 498; *Darlington v City of New York,* 31 NY 164; see Ann., 51 ALR3 657). These grounds of public policy have been consistently observed by later cases *(Sexauer & Lemke v Burke & Sons Co.,* 228 NY 341, 342; *Kennedy & Co. v New York World's Fair 1939,* 260 App Div 386, 388, affd 288 NY 494, supra; Matter of Hempstead Resources Recovery Corp. v Scalamandre & Sons,* 104 Misc 2d 278, 279; *Ingram & Greene v Wynne,* 47 Misc 2d 200, 202-204).

As I understand the position of the majority, the force of these precedents is acknowledged, but a further gloss is introduced in the rule by making its application depend on whether the use of the property is devoted to public purpose. I do not perceive in the cases any distinction related to that test; indeed, the latest precedent in our court and affirmed by the Court of Appeals rejects the basis for such a distinction *(Kennedy & Co. v New York World's Fair 1939, supra,* at pp 388-389). The distinction, as I see it, is not justified by the statute or the decisional law; moreover, it would mean that the property of a municipal corporation leased for one of various purposes would be exposed to the danger of loss in the event the purpose was later found not to be public. Indeed, the condition to the rule suggested by the majority is closely linked to the largely discredited and discarded dichotomy of the governmental-proprietary functions of a municipal corporation.

It is no answer to say that the land could not be sold to satisfy the lien, but only the leasehold, because the municipality should always be in a position to choose its lessees; to permit the foreclosure of the lien on the leasehold carries with it the necessary implication that the municipality has lost its right to control the identity of the party to whom it would grant the use and possession of its property. This obvious peril to municipal property is precisely what the plan of the Lien Law was designed to avoid.

Here, section 383 of the New York City Charter provides that parks and public places are inalienable, yet section

384 of the charter permits such land to be leased by approval of the Board of Estimate after public auction or sealed bids. This mode of the exercise of municipal power must be strictly complied with *(Miller v City of New York, 15 NY2d 34, 37)*, and it is wholly incompatible with that view to sanction the filing and enforcement of a mechanic's lien against a leasehold of municipal property.

I therefore vote to affirm the order.

TITONE and GULOTTA, JJ., concur with WEINSTEIN, J.; HOPKINS, J. P., concurs in part and dissents in part, with an opinion, in which RABIN, J., concurs.

Order of the Supreme Court, Kings County, dated January 26, 1981, modified on the law, by deleting therefrom the provisions granting the application with respect to the mechanic's lien and directing the discharge of said lien, and substituting therefor a provision denying the application as to the mechanic's lien. As so modified, order affirmed, with $50 costs and disbursements to appellant.