OPINION OF THE COURT
Richard F. Kuhnen, J.
This is a motion for summary judgment in favor of plaintiff in this foreclosure action. Plaintiff also seeks a reference to compute the amounts due plaintiff and to report whether the mortgaged realty should be sold as one parcel.
Plaintiff Lincoln First Bank, N. A., is the trustee for bondholders of certain industrial development bonds. *893 These bonds were issued by defendant Broome County Industrial Development Agency (BCIDA) on December 16, 1980 and are secured by a mortgage of property owned by BCIDA in the Town of Conklin. Plaintiff now seeks to foreclose upon that realty. It is uncontested that BCIDA is in default upon the bonds.
The defendants, in addition to the mortgagor BCIDA, include parties which are alleged to have some interest in the realty or have guaranteed repayment of the bonds.
Defendant Spaulding Bakeries Inc. (Spaulding) is a tenant of the mortgaged realty. It promised to pay rent in an amount corresponding to the amount due upon the bonds. Spaulding issued a written guarantee to plaintiff that the bonds would be paid. It is uncontested that Spaulding has defaulted in its duty to pay rent since October 1, 1981. It has since filed for bankruptcy.[1] Spaulding has not appeared in the action and is in default.
Defendant New York Job Development Authority is alleged to be a subordinate lienor to plaintiff by virtue of a mortgage allegedly filed subsequent to the one securing plaintiff’s bonds. This public benefit corporation has neither appeared nor opposed the present motion.
Defendants SB Baking Company, Inc., and OM Baking Corporation have issued written guarantees to plaintiff, insuring payment on the bonds. Neither of these defendants has answered. Both are in default.
Defendant C.S.& K. Roofing & Sheet Metal, Inc., is a mechanic’s lienor which did appear in the action but has not pleaded. This defendant was given notice of this motion pursuant to CPLR 3215 (subd [f]). It is in default. Defendant Besco Equipment Co., Inc., is also alleged to be a mechanic’s lienor. It, too, is in default. Similarly, defendants Universal Instruments Corporation and other alleged tenants of the premises are in default.
Defendant A. J. Cerasaro, Inc. (Cerasaro) is alleged to be a mechanic’s lienor. Cerasaro has asserted three affirma *894 tive defenses and opposes this motion.[2] Plaintiff now seeks dismissal of these defenses.[3]
Cerasaro’s first affirmative defense charges that plaintiff did not receive adequate consideration for the discharge of other security for payment of the bonds. Cerasaro asserts that its own security was impaired by plaintiff’s failure to get adequate value upon a mortgage of realty in Vestal, New York. Plaintiff, however, has established without contradiction that the sale of the Vestal property was approved by the United States Bankruptcy Court for the Northern District of New York on January 26, 1982 pursuant to section 363 of chapter 11 of the United States Code. That determination, which was made upon notice to all the creditors of Spaulding, necessarily entailed a review of the adequate protection of interested parties if they opposed the sale (see US Code, tit 11, § 363, subd [e]). Here, however, there was a written consent to the sale submitted on behalf of the creditors. As such, defendant has failed to raise any basis for relief in this forum as to the adequacy of consideration relating to the release of the security interests in the Vestal property. Defendant Cerasaro’s first affirmative defense is therefore dismissed.
. Next Cerasaro asserts that an affidavit filed by the lender in purported compliance with section 22 of the Lien Law was misleading and inaccurate. Section 22 provides, in pertinent part, that a “building loan contract either with or without the sale of land * * * must be in writing and duly acknowledged, and must contain a true statement under oath, verified by the borrower, showing the consideration paid, or to be paid, for the loan * * * and showing all other expenses, if any, incurred, or to be incurred in connection therewith, and the net sum available to the borrower for the improvement” and must be filed with the county clerk. The section goes on to state: “If not so filed the interest of *895 each party to such contract in the real property affected thereby, is subject to the lien and claim of a person who shall thereafter file a notice of lien” (Lien Law, § 22).
The Court of Appeals has held that the interest of a lender in a building loan contract is subject to the subordination penalty of section 22 of the Lien Law if the lender “knowingly files a materially false statement” (Nanuet Nat. Bank v Eckerson Terrace, 47 NY2d 243, 248). Cerasaro urges that the lender in this case has so filed a false statement and it therefore urges its lien has priority over the mortgage. The court in Nanuet Nat. Bank v Eckerson Terrace (supra) went on to hold that a motion for summary judgment may properly be denied in such a case because (p 246) “whether the statement was materially false and whether the [lender] had knowledge thereof were disputed questions of fact” requiring a trial. Cerasaro urges that plaintiff’s motion must be denied as defendant has raised questions of fact as to the bank’s knowledge of the validity of the financing statement and the truth of the statement itself in respect to the cost of the land and the total sum available for the improvements.
Plaintiff asserts, however, that the financing in this case was not a “building loan contract” within the meaning of section 22 of the Lien Law. In plaintiff’s view, the filing of the statement was not required and is no basis to subordinate its interest to defendant’s subsequently filed mechanic’s lien.[4]
Plaintiff first urges that the bond purchase arrangement at bar is not a building loan contract because BCIDA did not borrow for the purpose of making improvements upon its realty. The Lien Law defines a building loan contract as “a contract whereby a party thereto * * * in consideration of the express promise of an owner to make an improvement upon real property, agrees to make advances to or for the account of such owner to be secured by a mortgage on such real property, whether such advances represent moneys to be loaned or represent moneys to be paid in purchasing from or in selling for such owner bonds * * * secured by such mortgage” (Lien Law, § 2, subd 13). Plaintiff’s counsel *896 infers that the bond proceeds were simply public funds, unrelated to any duty to limit the application thereof to improvements on the mortgaged realty.
Such a construction, however, seriously misinterprets the entire nature of this transaction. The funding involved cannot be considered separately from the express purposes of the transfer of the realty to BCIDA and of the loan itself. It is clear that BCIDA, the owner, in consideration of the purchase of these bonds by the lender, Lincoln First Bank, N. A., expressly promised that the proceeds would be applied solely for the improvement of the realty it had mortgaged to secure the loan. (See section 4.04 of article IV of the Indenture of Mortgage and Trust, which incorporates, by reference, section 4.3 of the lease agreement.) The bonds themselves made express reference to the lease agreement, which required the improvements to be made, and the bonds state their purpose is for the construction and improvement of the Conklin premises. It was contemplated from the conception of the transaction that the proceeds would be held in trust and advanced on behalf of BCIDA for improvements to the mortgaged realty. The general type of bond purchase financing in this case is of a type encompassed by section 22 of the Lien Law.
Next plaintiff asserts that even if the financing herein was of a type generally considered a building loan contract, section 22 of the Lien Law does not apply because the subject parcel is owned by a public benefit corporation.
Defendant Broome County Industrial Development Agency is a public benefit corporation established by section 895-a of the General Municipal Law and is a public corporation under the Lien Law (§2, subd 6). The legislative purpose of such agencies is expressly declared to be to advance the general prosperity and economic welfare of the people of New York through the improvement of industrial facilities (General Municipal Law, § 858). The agency is expressly granted the power to acquire realty (General Municipal Law, § 858), which in fact BCIDA has done in this case.
Traditionally public property, whether it be owned by the State of New York, a municipality or a public benefit corporation, has been immune from execution and seizure *897 to avoid an intolerable burden upon public comfort and safety (Leonard v City of Brooklyn, 71 NY 498). The virtue of such a policy is well recognized and is ensconced throughout the Lien Law by the different treatment of “public improvements” and improvements of realty owned by private parties. The underlying intention of the Lien Law directs that a private lien shall attach to real property privately owned, whereas a public lien attaches solely to the funds of the public corporation due under the contract for the improvement (Kennedy & Co. v New York World’s Fair 1939, 260 App Div 386, 388, affd 288 NY 494).
The sanctity of exclusive public determination of interests in public property was reaffirmed recently by the Court of Appeals in the case Matter of Paerdegat Boat & Racquet Club v Zarrelli (83 AD2d 444, revd 57 NY2d 966). The court therein discharged a mechanic’s lien which was asserted against a private lessee of property owned by the City of New York. The lessee leased a parcel from the city and erected a building thereon, using it as a racquet club. The Court of Appeals refused to allow a mechanic’s lien to acquire an interest in the publicly owned realty despite extensive private employment thereof.
The present case differs from all discovered precedent involving similar issues by the degree in which the public corporation has divested itself of real interest in the property. Unlike Paerdegat (supra), here the public corporation has done more than lease the realty to a private party. It has also entered into an executory contract for its sale to a private party for a nominal consideration. Still further, it has mortgaged the realty for an obligation which another, Spaulding, is to pay. Under such circumstances, the purposes for the traditional policy avoiding private seizure and foreclosure of public land are greatly diminished, especially in light of the fact the corporation is expressly given the power to encumber the realty with a mortgage (General Municipal Law, § 858).
In fact nothing in the definition of “building loan contract” in section 2 of the Lien Law or its application in section-22 expressly limits the statute’s effect to private lands. The definition speaks of “an improvement upon real property” (Lien Law, § 2, subd 13). An improvement, as *898 defined in subdivision 4 of section 2, encompasses both improvements to private (subd 8) and public (subd 7) realty.
The court recognizes that in other circumstances the type of leasing arranged here may be deemed nothing more than a secured sale of the premises to the “lessee” (see, e.g., Matter of Winston Mills, 6 BR 587). However, to ignore the ownership interests of the industrial development agency, as slight as they may be in light of the inundation of private, equitable interests in this realty, would affect the salutary purposes of the New York State Industrial Development Agency Act (General Municipal Law, art 18-A). Ownership, as nominal as it seems, of such property by an industrial development agency, yields many benefits to the private lessee, including, for example, exemption of the land from real property taxes (Matter of Adams Co. v Nist, 72 AD2d 908). We are not convinced that the immunity of public lands from foreclosure of mechanics’ liens should be now encroached to the detriment of the private user of those lands under the Industrial Development Agency Act. Immunity of public lands from such foreclosure has a long history and should not now be changed without direction from the Legislature.
Defendant Cerasaro’s second affirmative defense is therefore dismissed.[5]
Finally, Cerasaro seeks to invoke the equitable doctrine of marshaling and thus require plaintiff to enforce guarantees of payment of BCIDA’s obligations upon the loans before plaintiff forecloses upon the mortgaged realty. Defendants SB Baking Company, Inc., and OM Baking Corporation issued plaintiff a written guarantee of payment of the loans. The Farmers Home Administration of the United States Department of Agriculture guaranteed 90% *899 of one of the series of bonds and it is now uncontested that this obligation is satisfied.
Plaintiff has submitted some evidence that the guarantees of the two defendants are worthless as the guarantors are said to be insolvent. Be that as it may, defendant Cerasaro’s request for marshaling of these guarantees is dismissed not only due to the clear prejudice which would accrue to plaintiff in seeking to recover from these other parties but also because these guarantees are not assets subject to marshaling (see Dorr v Shaw, 4 Johns Ch 17).
Its affirmative defenses thus being dismissed as without merit as a matter of law, defendant Cerasaro has failed to show any basis for a continuance of this motion pursuant to CPLR 3212 (subd [f]).
Plaintiff is entitled to summary judgment as against defendant Broome County Industrial Development Agency upon plaintiff’s stipulation that it is not entitled to a deficiency judgment against that defendant.
Plaintiff is entitled to default judgments against the remaining defendants.
The court directs that a referee shall compute the amounts due plaintiff and shall examine and report whether the mortgaged premises should be sold as one parcel.

. Although no copy of the judgment appears in the present record, it is alleged that by judgment dated May 27, 1982 the United States Bankruptcy Court for the Northern District of New York vacated the automatic stay pursuant to section 362 of title 11 of the United States Code with respect to the mortgaged premises.

. Defendant Cerasaro has also asserted several cross claims against defendant BCIDA. The viability of those claims is not an issue presently before the court.

. As a preliminary matter, the court would note that the pleadings in issue, stylized as “affirmative defenses”, are not, for the most part, defenses to plaintiff’s right to foreclosure per se. For example, Cerasaro’s second “affirmative defense” does not seek to extinguish plaintiff’s right to foreclose upon the mortgage but rather to subordinate plaintiff’s mortgage interests to Cerasaro’s claimed mechanic’s lien.

. It is npted that plaintiff does not presently raise any direct challenge to the substantive or procedural validity of defendant Cerasaro’s mechanic’s lien.

. Surprisingly plaintiff has not asserted that Cerasaro’s mechanic’s lien is invalid in the first instance. Section 22 of the Lien Law would clearly subordinate interests in realty only to valid subsequent liens. Cerasaro’s notice of mechanic’s lien was nominally filed against solely Spaulding, the private tenant of publicly owned land, on January 29, 1982. The notice indicates Cerasaro performed labor and furnished materials of a total value of $347,635.32 of which $28,957.33 is said to be unpaid. In the case Matter of Paerdegat Boat & Racquet Club v Zarrelli (83 AD2d 444, revd 57 NY2d 966, supra), the Court of Appeals discharged a similar mechanic’s lien as it was filed against a private leasehold interest in land owned by a public corporation.